## STARK et al. v. HUNTON et al.

At common law, and independent of our statute, it is a settled rule at this day, that express words of exclusion are not necessary in a will in order to bar dower; it is sufficient if there be a manifest and unequivocal intention.

This intent must be so plain as to admit of no reasonable doubt. The claim of dower must be inconsistent with the will, or so repugnant to its provisions as to disturb and defeat them.

If the intent be doubtful or ambiguous, the legal title of the widow will prevail.

In the following devise : " I give, devise and bequeath unto my wife Jane all my tavern house and lot where I now live, together with all the furniture and stock in the same ; to have and to hold to my said wife Jane during her natural life, provided she remains my widow : but in case she should marry again, then it is my will that my said tavern house and lot and premises be disposed of *according to law :*" the manifest intent of the testator is, that it should be in lieu of dower, at least in the premises so devised.

The acts of the widow while in possession, treating the property as her own, altering and improving the property to enhance the annual value, leasing it out for a number of years, reserving rent to herself; are consistent only with the fact, that she considered herself as holding under the will, and amount to an acceptance of the devise.

The widow having married again, her estate is defeated; she cannot afterwards claim her dower, and the devised premises must go, according to the directions of the will, to those lawfully entitled; that is, to the children of the testator, and those representing them.

The object of the statute of the 24th February, 1820, *(Rev. L.* 677,) was, to compel the widow, in all cases where land had been devised to her, to elect between the bounty of her husband and her legal rights, and to prevent her enjoying both. By the just and reasonable construction of this act it extends to all lands and real estate embraced in the will of the testator.

The intent of the act is, that the widow should not be entitled to dower in any

lands devised by will, where, under the same will, she took an interest in land or real estate as devisee.

How far the statute may apply to after acquired lands, or other real estate of which the testator may be considered as dying intestate, *query.*

Jan. 1831.
———
Stark et al.
v.
Hunton et al.

BENJAMIN Weller, late of Paterson, in the county of Essex, died in June, 1823, leaving a last will and testament, which was duly proved by Jane Weller, his widow, and Philemon Dickerson, executors in the said will named. The will directed that all debts and expenses should be paid out of the personal estate, and such real estate as was for that purpose designated in the will. Then followed this device: "I give, devise and bequeath unto my wife Jane, all my tavern house and lot where I now live, together with all the furniture and stock in the same : to have and to hold to my said wife Jane during her natural life, provided she remains my widow; but in case she should marry again, then it is my will that my said tavern house and lot and furniture *be disposed of according to law.*" The testator left several children. The personal property and the real estate, except what was given to the widow, were sold, and the proceeds applied to the payment of debts. The widow, after her husband's death, remained in the tavern house, occupying and enjoying it, "together with all the furniture and stock in the same," according to the terms of the will. She converted the lower part of the tavern house into stores, and leased them for five years to sundry persons, reserving rent to herself, to the amount of about six hundred dollars. In November, 1828, she married George Hunton, with whom she lived on the premises devised to her, at the filing of the bill. The complainants, some of whom are children, and others representatives of children of the testator, seek to have the will established, and the real estate divided or sold, that each one entitled may enjoy his share.

*E. Van Arsdale, jun.* for the complainants. The only questions are, as to the devise to the widow—whether she has accepted the devise, and whether it is a bar to her claim of dower ?

1. The bill charges that she did accept it : in her answer she denies that she accepted it in lieu of dower, or that her keeping possession of the premises bars her dower. An acceptance may

be inferred from circumstances : 3 *Bro. C. C.* 88 ; 1 *Eden,* 489 ; 1 *Swans. R.* 382. The doctrine of *election* applies to dower. The acts of the widow amount to an acceptance of the devise. She has always, since her husband's death, retained possession of the property and furniture. She occupied it several years as a tavern and boarding house, then made alterations in the property, rented out the house, and had the lower part converted into stores, which she has rented to four different persons, at an annual rent of near six hundred dollars. The leases are made by her individually, and rents reserved to her, and she has received the rent until she was injoined. She appeared to be acting for herself, and much to her own interest. It is too late for her now to say she has not accepted the devise.

2. Was this devise intended to be in lieu of dower ?—There are no express words to this effect in the will. The property is given to her during widowhood. No express words are necessary in a will to bar dower : it depends on the intention of the testator and circumstances of the case : 2 *Scho. and Lef.* 449 ; 2 *Mad. C. P.* 57. The testator had but a small real estate beside what he devised to the widow, and that he ordered to be sold for the payment of debts ; this shows that he did not intend his wife to have dower. His other property was not sufficient to pay the debts. He gave his wife all the furniture, which was the greatest part of the personal estate. In short, he gave her all his property left, after paying the debts, during widowhood. He could not have intended her to have dower too. I conclude, therefore, that the intention is manifest on the face of the will, that the property devised to her should be in lieu and in bar of dower.

But if she is entitled to any dower at all, she cannot claim dower in the tavern house devised to her. She cannot take the same property in two capacities : 2 *Eden,* 256. She cannot take as devisee and dowress under the same will : 2 *Mad. C.* 48 ; 1 *Swanst. R.* 370. She could not, before her second marriage, have held two thirds of the tavern house as devisee, and the other one third as dowress : *Coop. R. C.* 320. By electing to take as devisee, she forfeits her right as dowress. I contend that she did elect to take as devisee : 1 *Swanst.* 394, *n. ;* 2 *Scho. and Lef.* 444. And having accepted the devise, she cannot now renounce

it and say she will have her dower ; it is too late : 1 *Swanst. R.* 372; 3 *Atk.* 607.

3. But if there is any doubt upon common law principles, I think the question is settled by our statute, *Rev. L.* 677, *s.* 1; which enacts, that a devise of real estate to the wife is a bar to dower, unless she dissents, in writing, in a limited time : she has not done so in this case. Upon her second marriage the property was to be disposed of according to law. I take this to mean, it should go to his children as they might be entitled.

Jan. 1831.

Stark et al.
v.
Hunton et al.

*P. Dickerson,* for the defendant. Weller died in 1823, leaving seven children. The wife retained possession of the premises and kept the family together. The leases made by her were for her own use. After the marriage, the executor sold the personal property, which she had forfeited by the marriage ; and the question is, whether she is entitled to dower in the real estate, or any part of it. We contend she is entitled to dower at common law. The general doctrine is, where a devise is made to a widow, she will also be entitled to her dower, unless the holding both will be inconsistent. He right of dower is independent of her husband ; if he gives her any thing it will be considered additional. The doctrine of *election* cannot apply, except where both cannot be held. This is not such a case. She had a right to hold the possession precisely as she did, as a dowress, until dower was assigned her. If our statute did not exist, there could be no question in this case : she would be entitled to dower. We contend, that our statute only applies to cases where there is a devise over, upon the second marriage of the widow. In this case, there is no devise over : it is not within the statute. The statute can have no effect upon the construction of this will.

The intention of the testator, that she should at all events have her dower in this property, is manifest upon the face of the will. He gives the property to her during widowhood : he could not have intended to strip her of all property upon her second marriage. She had all the children to bring up and educate, and therefore he intended to make a liberal provision for her. It is a sound rule of construction, that effect is to be given to every part of an instrument; but by the construction contended for on the

other side, the last clause of the will must be rendered useless, or its meaning perverted.    Why were the words " to be disposed of according to law," inserted, unless something definite was meant ? And what is the import of those words ?   The obvious meaning of this clause is, that upon her second marriage the provision of the will should cease to operate upon this property ; that it should be disposed of, not according to the will, but according to law in case no disposition by will had been made, or he had died intestate : that is, one third to the widow, and the other two thirds to the children.    The testator intended, that in case she married, she should still have what the law would have given her, her dower in the premises, and if she did not, that she should have the whole property.

*I. H. Williamson*, for defendants.    The general principle is, that the widow is always entitled to both the property devised and her dower, unless precluded by express words, or manifest intention.    It is not necessary that it should appear that both *were* intended.    If there is any ambiguity, or want of evidence of intent, the rule is in favor of the widow.

It was at one time held, that to bar dower *express words* were necessary : 2 *Ves. jr.* 580 ; 2 *Dick.* 835.   Since that time it has been held, that express words are not necessary ; but the intention must be clear and undoubted, or else the widow takes dower. The two claims must be clearly inconsistent, so that she cannot take both without defeating some part of the will.    The case in 2 *Scho. and Lef.* 444, recognizes these principles, and shows what is meant by clear and manifest implication or intention.    It must be beyond doubt : if there be doubt or ambiguity the widow shall have dower.    She was excluded in that case because the devise was repugnant to her claim of dower.    In *French* v. *Davis,* 2 *Ves. jr.* 572, the question was, whether the will was inconsistent and irreconcilable with the claim of dower.    In the case before the court, there is nothing in the will to manifest the intention of the testator that the wife should be deprived of dower.

The widow is not barred of her dower because she has had part of the estate devised to her, or because the other part of the estate is devised to others.    The devise to others is always taken

subject to incumbrances, of which dower is one. Nor is she bar- <span style="float:right">Jan. 1831.</span>
red because the land devised to her is more valuable than her
dower: 8 *Vin. Ab. tit. Devise,* 366, *pl.* 45 ; 2 *Eq. Ca. Ab.* 353,
*Lemon* v. *Lemon ; Prec. in Ch.* 133, *Hitchin* v. *Hitchin ;* 2
*Atk.* 427. These cases govern the one now before the court.

The widow may claim by two titles; *one third* as *dowress,*
and *two thirds* as *devisee :* her doing so is not inconsistent with
the will : *Rop. on H. and Wife,* 559.

This is not a case of election. Independent of the statute,
there are cases where the widow may be put to elect ; but to es-
tablish an election, it must be shown that she *intended* to make
her election, and that she *understood her rights :* neither of
which appear. Without intention there can be no election, and
the widow is not bound to elect until the situation of the estate is
known, and she is able to determine which is most beneficial for
her. The right of election may continue till the whole estate is
wound up and closed, if it was fifty years: *Wake* v. *Wake,*
1 *Ves. jr.* 335 ; 3 *Bro. C. C.* 255. Acts done in ignorance, do
not amount to an election, nor acts of mere ownership, consistent
with her claim either as dowress or devisee. On general princi-
ples, the widow would be clearly entitled to dower.

If there is any doubt in the case, it arises on the statute. What
is the true construction of this act ? We contend that it operates
only in favour of devisees ; that it extends only to lands devised
to other persons, or devised over, after the interest of the widow
ceases. The widow may recover against purchasers, her dower
in lands conveyed by the husband. The statute extends only to
lands *devised* by the husband. Suppose the husband dies intes-
tate as to part of his real estate, is the widow barred of her dow-
er in these lands ? Now we insist, that as to the property in
question here, the husband died intestate ; that the claim of the
children is as heirs at law, and not as devisees. The court are
called on to *extend* the construction of this act, or this case can-
not be brought within it. This estate is not devised over after the
marriage : the language of the will is, that the property is to be
disposed of *according to law.* What law, but the law disposing
of the real estate of persons dying intestate ? And does not the
law provide for the widow as well as the children ? Can the chil-

Jan. 1831.

Stark et al.
v.
Hunton et al.

dren claim as devisees? There is no devise to them. Must they not claim as heirs at law? Does not this very clause confirm and make manifest the claim of the widow? She claims according to law, as well as the heirs. Her right is equal to theirs: both are legal rights, and together cover the whole estate. But it is said that there has been a *forfeiture.* Whence this idea? A forfeiture can only arise from an unlawful act, as committing waste, &c. The determination of the estate here was on the occurrence of a particular event, which the policy of the law does not, and the husband had no right to prohibit. The meaning of the will is, that in case of a second marriage the *husband's bounty* should be withdrawn; but the *legal rights* remain. After that event, the law, and not the will, was to regulate the rights of all parties interested. We insist, the widow is entitled to dower. The bill is for an account of the personal estate, and also the rents and profits of the real estate since the marriage. We insist, the widow is not bound to account for the rents and profits. As dowress, she was entitled to retain the possession, and to receive the rents and profits of this property until dower assigned her: *Rev. L.* 397. She did not receive the rents and profits of the two thirds, as receiver for the children. If, however, she is accountable, she is entitled to allowance for maintaining the children.

*Th. Frelinghuysen,* in reply. We insist, 1. That the widow is not entitled to dower at common law: 2. That there is nothing in the will to save her right; and, 3. That the statute is a bar. It is to be observed that the whole of the real estate, except the tavern house in question, has gone for the payment of debts. All our inquiries are as to this one devise. It is admitted that no express words are necessary in the will to bar dower; that a manifest intent is sufficient, and that it may be inferred from *circumstances.* In the time of Lord Camden, he was struck with the inconsistency of contrary claims by the widow. It is said that, on this point, Ld. Camden has been overruled. The subject has been equitized on, by Mr. Roper and others. They have drawn distinctions between a *real* and a *mixed* fund, that have gone to destroy *principle.* The case in 2 *Ves. jr.* 572,

is *sui generis*, arising out of particular circumstances, and not a safe precedent. Ld. Redesdale lays down the safe rule in *2 Sch. and Lef.* 449.

Can any one doubt as to the intention of the testator? He intended his wife should take under the will, and according to the will, not part as dowress and part as devisee. She cannot do an act under the devise without conflicting with her dower right. We find her leasing and receiving rent. Suppose she now undertakes to assert her dower right in these very premises, and institutes a suit, in what situation would she stand? We contend, that the right she acquired under the will has been accepted and enjoyed by her; and she cannot now come back and claim her dower. She has elected, and is bound by it. Here we are met by general principles, without any particular case to sustain them. The case in *Swanst. R.* shows what will amount to an acceptance of the devise. Will ignorance avail her? Did she not know the nature of the property? Every widow knows that she is entitled to dower in the lands of her husband. She could not have been ignorant of this, or of the extent of the devise. The dower was one third, the devise was of the whole property. She had only to choose between *one third* and *the whole*. We say she has done so, and is to be fixed with the election; that this is to be inferred from the circumstances.

There is nothing in the will to save her right upon second marriage. The property was given to her during widowhood. She has by her own act defeated the devise to her. The testator intended, no doubt, that his wife should have an inducement to remain single and bring up the family, and not bring a stranger to their government. He did not intend, that if she would marry, and relinquish the bounty, she should come in as dowress and take one third of the land; for the property, in case of marriage, was to be disposed of according to the *law of the case*.

But what does the *law of the land* say? Our statute of 1820, intended to bar, unless the wife dissents, in all cases. Now we admit there is a chasm in the statute, as to after acquired lands; but where the will covers the whole estate, there the statute is peremptory. The statute says, the wife shall not be entitled to dower in any lands or real estate *devised by her said husband,*

Jan. 1831.
_____
Stark et al.
v.
Hunton et al.

unless she expresses her dissent in writing, &c. Can we suppose that the legislature intended to bar her dower in *other lands*, and yet leave her dower *in the lands devised to her?* This land was devised to her, and is therefore precisely within the statute. She takes the equivalent intended by the legislature, and yet it is said that now she may take the dower itself. I submit that the wife is not entitled to dower.

As to the rents and profits, she must account for them from the marriage. By the statute, the widow is to remain in and enjoy the property until dower assigned; but it does not, in that case, mean that she is to alter the property and change its nature and character. In doing this the court may assume she was a trespasser, her acts are *waste*, and in strictness she has forfeited all right to dower. She is accountable on any ground from the time of her marriage. As to compensation for bringing up the children, it ought not to be allowed; guardians should have been appointed; the widow should not be permitted to swallow up the inheritance in this way.

THE CHANCELLOR. The important inquiry in the case is, whether the former widow, now Mrs. Hunton, is entitled to dower in the tavern house and lot devised to her by the will of her former husband, Benjamin Weller.

On the part of the complainants it is insisted, that the devise in the will was intended to be in lieu of dower, and was accepted by the widow; and that having by her second marriage forfeited the bounty of her first husband, she cannot now turn round and claim dower in the very property which she took and held as a devisee under the will. While on the other hand, the converse of these propositions is contended for as true, on the part of the defendants.

Considering this case as at common law, and independent of our statute, the two questions that present themselves are, 1. Did the testator intend the devise to be in lieu of dower? and, 2. Did the widow accept of the devise?

Notwithstanding some cases to the contrary, I think it may be laid down as a settled rule at the present day, that express words of exclusion are not necessary in a will, in order to bar dower. It

is sufficient if there be a manifest and unequivocal intention. This intention must be so plain as to admit of no reasonable doubt. If it be doubtful or ambiguous, the legal right of the widow will prevail. See the case of *Birmingham* v. *Kirwan*, 2 *Sch. and Lef.* 444, and the authorities there cited.

Where there are no express words of exclusion, as in the case now before the court, the intention of the testator is to be gathered from circumstances. No general rule can be adopted which will properly or safely apply to the great variety of cases that are from time to time occurring in the community. That which approaches nearest to such rule, is the principle already adverted to, that the intention must be so plain as not to admit of reasonable doubt. The claim of dower must be inconsistent with the will, or so repugnant to its provisions as to disturb and defeat them. This principle runs through all the cases, from that of *Lawrence* v. *Lawrence*, 2 *Vern.* 365, to the latest of the English decisions, and has been adopted by the most learned judicial tribunals of our country. To review the authorities in detail is not necessary for my present purpose, and might well be looked on as an affectation of learning. They were lately reviewed with great clearness by Chancellor Kent, in the case of *Adsit* v. *Adsit*, 4 *Johns. C. R.* 448. The result from the whole was, that where there are no express words of exclusion, the intention to exclude must be beyond reasonable doubt. And in a late work, coming over the subject of dower, the same principle is recognized: 4 *Kent's Com.* 57.

The question then recurs, Did the testator intend the devise to be in lieu of dower, in the premises thus devised to his wife?

The provisions of the will are very brief and simple. He appropriates all his real and personal property, save the tavern house with the furniture and stock belonging to it, to the payment of debts. The tavern house with the furniture and stock he gives to his wife during her natural life, provided she remains his widow. Or in other words, he gives to her all his clear estate after the payment of debts, subject to be defeated by her subsequent marriage. He left five children, all under age—the youngest an infant. It would seem that he placed great confidence in his wife, who was the mother of those children. He

Jan. 1831.

Stark et al.
v.
Hunton et al.

placed under her exclusive control all his earthly substance, rely-
ing on her affection and prudence to take care of and deal justly
with their common offspring. He seems to have anticipated the
future marriage of his wife as an event rather possible than
probable; and provides that in case she should marry, the devise
should be considered at an end, and the property be disposed of
according to law.

I think the manifest intention of the testator was, that the de-
vise to the wife should be in lieu of her dower, at least in the
premises thus devised. He never intended that she should hold
one third part of this tavern house as dowress, and the remaining
two thirds as devisee. It was one property, not susceptible of
convenient division. The devise was of the whole; and the ob-
ject was one entire object, the benefit of his wife and children.
Some of the English cases have been liberal in support of the
widow's claim for dower; but I do not find one that goes so far
as to maintain, that where certain property is given to a wife,
during her widowhood, that she is also entitled to claim dower
out of that same property. The two claims are inconsistent, and
cannot stand together. In the case before the court, the devise
to the wife is different in its nature and consequences from her
legal right to dower; and I do not see how the two claims could
be exercised as to the same property, at one and the same time.
In the case of *Birmingham* v. *Kirwan*, already cited, Ld.
Redesdale ruled that a devise to the wife for life of certain lands
and a house, with directions to keep it in repair, was inconsistent
with the assertion of a right of dower *in the same lands;* and
she was accordingly put to her election. And the same doctrine
is held by Sir Thomas Plumer, the vice chancellor of England,
in the later case of *Dorchester* v. *Effingham, Coop. Eq. Rep.*
319. On this question, whether where the whole of the lands
are devised to the wife, she may take two thirds of them as a
devisee under the will, and the remaining one third under her
title to dower, there are some ingenious remarks in 1 *Roper on
Husband and Wife,* 561; and the author seems to conclude
that the wife may take in both capacities in the same property.
But I am not satisfied with the reasoning of the author. The
policy of the great mass of the English cases appears to have

been, to save the dower of the widow if possible; and for this purpose, numberless refinements and distinctions have been resorted to by the courts. Our policy, as manifested by our statute, is different; and I am not disposed to run counter to it, and give to this will a construction which I think it will not justly bear.

2. Upon the question of acceptance, I incline to think that the case is with the complainants. The widow has treated the property as her own in every respect. She has altered and improved it. She has leased it out for several years, to a number of persons, reserving rent to herself. She has advisedly taken measures to enhance the annual value of the property, evidently for her own benefit. I should consider this an acceptance of the provision under the will and according to the terms of the will, and binding upon the widow, unless it could be shown that she had mistaken her rights, or was not properly apprised of them. There is nothing in the case to induce such a belief. The idea thrown out, that as widow she was entitled to remain in the mansion house, free of rent, until dower was assigned her, and that, *in favorem dotis*, she may be considered as remaining in under that provision of our statute, and not as taking under the will, cannot be entertained. Her acts while in possession were directly repugnant to such a pretension, and are consistent only with the fact, that she considered herself as holding under the will, and therefore, the property as her own freehold.

Looking at this case, therefore, on common law principles merely, I am of opinion that it was plainly the intention of the testator to exclude the widow from dower in the premises; and that the devise, intended to be in lieu of dower, was accepted by the widow in conformity with such intention; and that, having defeated her own rights by the subsequent marriage, she cannot now claim her dower; and consequently, that the property will go over, according to the directions of the will, to those who are lawfully entitled—by which, I understand, the children of the testator, or those representing them.

But there is another view of this case, which it is important to consider. The difficulties experienced by our courts of justice in

the construction of wills, and in ascertaining and settling the rights of parties, where the widow claimed as devisee and dow-ress, and the increasing uncertainties consequent thereupon, in-duced the legislature to interpose, and establish some plain rule, which might be not only simple in its terms, but definite in its results. By the act of 24th February, 1820, entitled, a supple-ment to the act relative to dower, it is enacted, "that if a hus-band shall hereafter devise to his wife, by a will duly executed to pass real estate, any lands or real estate, for her life or otherwise, and without expressing whether such devise to her is intended to be in lieu or bar of dower, or not, and the said wife shall survive her said husband, that then the said wife so surviving, shall not be entitled to dower in any lands or real estate devised by her said husband, unless she shall in writing express her dissent to receive the lands or real estate so devised to her, in satisfaction and bar of her right of dower in the other lands and real estate devised in and by the said will, and file the same with the surro-gate of the county wherein she resides, or in which the lands or real estate devised to her shall be situated, within six months af-ter the probate of the said will; and then and in that case she shall be considered as renouncing the benefit of the said devise to her."

It is admitted that if this case fall within the provisions of this statute, the question is at an end; for it is not pretended that any dissent in writing was filed by the widow, pursuant to the act. The statute is not free from ambiguities, nor is it as exten-sive in its application as was, perhaps, originally intended: but it appears to the court to admit of a just and rational construc-tion, and that in such construction the present case is fairly em-braced. The evil that existed was one generally understood, and has already been adverted to. The object of the statute was to remedy the evil, and to compel the widow, in all cases where any lands or real estate had been devised to her, to elect between the bounty of her husband and her legal rights, and to prevent her from enjoying both; and I am of opinion that the object of the statute is fully answered, so far as it concerns all lands and real estate embraced in the will of a testator. How far the statute may apply to after acquired lands, or other real estate, of which

the testator may be considered as dying intestate, may be a question : but that question cannot arise here ; for the whole real property is devised, either to the wife or to the executors for the payment of debts.

It was argued, that, from the terms of the act, it was intended to operate only in favour of devisees of "*other lands* and real estate devised in and by the said will ;" and that it was not intended to bar the dower in the lands devised to the widow herself; or at all events that the act does not necessarily call for such a construction ; and that it should be construed strictly, inasmuch as it goes to take away a legal right. But the act not only uses the expression "*other* lands and real estate devised in and by said will," but it expressly says, that the widow shall not be entitled to dower in *any* lands or real estate devised by her said husband, " unless she shall dissent in writing as aforesaid." There is certainly an ambiguity in the act ; but taking the whole together, I think the intention of the legislature is manifest, that the widow should not be entitled to her dower in *any* of the lands devised by a will, where, under the same will, she took an interest in lands or real estate as a devisee ; and such a construction appears to me to comport best with the words of the act. I am therefore of opinion that, under the provisions of our statute, the defendant, Mrs. Hunton, can have no claim for dower in the lands devised to her, and which she has lost by her second marriage.

Hunton and wife must account for the rents and profits since the marriage, and an allowance must be made to them for the maintenance of the children during the same period. Let such an account be taken, together with a general account of the debts and credits of the estate, if need be, and let report be made by the master as to the practicability of making partition of the property among those lawfully entitled. The question of costs, and all further directions, are reserved.