| 52 591 |
| 62L 444 |

ABRAHAM V. VAN FLEET, JOHN T. BIRD, HENRY C. PITNEY
AND ROBERT S. GREEN, VICE-CHANCELLORS.

---

MARGARET A. HELME, GEORGE A. HELME and JOHN W.
HERBERT, JR., executors of the will of George W. Helme,
deceased,

v.

ADELINE H. STRATER et al.

1. Where a testator so devises and bequeaths the residue of his estate between his widow and children, as to evince an intention that they shall share equally therein, and the taking of dower by the widow in that residue will destroy the equality intended, the implication is that the portion given to the widow is given in lieu of her dower in all lands which constitute any part of

Helme *v.* Strater.

the shares of the residue given to the children, and she will be put to her election between that provision of the will in her behalf and her dower right in lands entering into the shares of the residue given to the children.

2. While from the express direction in a will that the provisions for the testator's widow are to be taken in lieu of her dower in lands mentioned in specified paragraphs of the will, implies that dower is to be taken in lands disposed of by other paragraphs than those enumerated, yet if it clearly appears that there is a mistake in enumerating the paragraphs intended, that implication will not prevail over the implication against dower which grows out of equality in disposition as already stated.

3. In cases where the language used by parties to a contract is indefinite or ambiguous and hence of doubtful construction, the practical interpretation put upon the instrument by the parties themselves will frequently control the meaning which the court will accord to the agreement.

4. Where a testator bequeaths the residue of his property without specific description, or, in other words, indicating an intention that it shall be enjoyed *in specie,* first to a tenant for life and then to a remainderman, and thus manifests that the same fund shall be successively enjoyed by both, the necessary inference and established rule in equity are that it must be invested as a permanent fund so that the successive takers shall enjoy it in an equally productive capacity. But where it consists in whole or in part of property which is in its nature perishable, which for some reason cannot be converted into money or cannot be so converted without great sacrifice of both principal and interest, the tenant for life will not be entitled to the annual product which the property thus perishing is actually making, but to interest from the testator's death on the value thereof estimated as of that time.

5. Where the perishing property consists of fluctuating, and, perhaps, irregular dividends, payable for an uncertain period of time upon shares of stock which are diminishing in number at an irregular rate, its value to the testator's estate at the time of his death, determined in advance of the time when it shall have perished, is to be had by ascertaining as each dividend is received, a sum which, if received at the testator's death, would, with interest and making annual rests, amount to that dividend at the time of its receipt. That sum will be principal to be invested. The difference between it and the dividend will be income. As the successive dividends come in, such differences, with the interest from the several sums similarly ascertained and invested, will go to the life tenants. The principal sums will go to the remainderman.

On bill to construe will &c., answer and proofs.

George W. Helme died on the 13th day of June, 1893, leaving him surviving his widow, Margaret A. Helme, and three children—Adeline H., the wife of Charles G. Strater; Olivia A., the wife of John W. Herbert, Jr., and George A. Helme.

Helme *v.* Strater.

Each of these children has issue, who, with their parents, are parties to this suit.

During his life, George W. Helme erected at Helmetta, in this state, a large plant as a manufactory of the products of tobacco, and therewith created and established an extensive and lucrative business. The plant became the property of a corporation named "The George W. Helme Company," the capital of which was originally $300,000, but in 1889 was increased to $500,000, consisting of five thousand shares, which were owned by members of his family and employes of the company.

Mr. Helme moved his residence to Helmetta, and induced his son and son-in-law, John W. Herbert, Jr., also to move there and assist him in the conduct of the business.

On the 1st of October, 1889, he entered into an agreement with his son and Mr. Herbert, which is as follows:

"This agreement, entered into this 1st day of October, A. D. 1889, between George W. Helme, of the first part, and George A. Helme, of the second part, and John W. Herbert, Jr., of the third part, all of the borough of Helmetta, N. J.

"Witnesseth, that the party of the first part is now the owner and holder of forty-seven hundred and fifty shares of the capital stock of the George W. Helme Company, and hereby agrees to sell to George A. Helme, of the second part, the one-third thereof, and to John W. Herbert, Jr., the one-third part thereof, on the following terms:

"On the 1st of January in each year, or at the making up of the annual statement of the earnings of the company, George A. Helme and said John W. Herbert, Jr., shall be entitled each to the one-third of the net earnings of the said company, less the dividends on the stock held by other parties, which is to be first paid before any division of the net earnings is made.

"Witnesseth, further, that whereas the said parties have entered into this mutual agreement and understanding, which shall be binding upon the heirs and executors of the party of the first part, in case of the demise of the said party before the said George A. Helme and John W. Herbert, Jr., shall each have acquired their respective one-third of the stock now held by the party of the first part.

"George A. Helme and John W. Herbert, Jr., shall each receive an annual salary of $4,000, to be charged to expense account on the books of the company as salaries for their respective undivided attention to the business of the company during the period required to acquire the said one-third interest as, hereinafter stated, said salaries to be drawn in monthly installments for their current family expenses. And on the 1st day of January in each year, or at the date of the annual ascertainment of the net earnings of the company, and.

Helme v. Strater.

after the payment of the dividends on the current year's business, one-third each shall be credited to the accounts of the said George A. Helme and John W. Herbert, Jr., respectively, until they each have acquired the one-third of the stock now held by the party of the first part as aforesaid.

" The one share of the stock purchased and transferred to John W. Herbert, Jr., on the 20th day of September, 1889, shall constitute a portion of his third of the share he is entitled to acquire.

" Now, it is hereby mutually agreed and understood that George W. Helme, party of the first part, will, on the 1st day of January in each year, or at the date of ascertainment of the yearly net earnings of the company, after the payment of the current year's dividends of his stock, transfer to the said George A. Helme and John W. Herbert, Jr., as many shares of the capital stock of the George W. Helme Company as they each can pay for at $300 per share out of their annual earnings, which shall be appropriated to this purpose and to no other, until they each have acquired the one-third of the stock of said George W. Helme as aforesaid.

" George W. Helme is to continue as president, George A. Helme as vice-president, and John W. Herbert, Jr., as treasurer of the company.

" George A. Helme and John W. Herbert, Jr., will have an equal voice in the active management of the business of the company, but all important matters shall be referred to the president, who shall retain and have full control and general direction of the business interests of the company.

" It is hereby agreed and understood that neither party hereto shall dispose of any stock they may so acquire to any party other than to some member of the family, without first giving to an immediate member of the family an option to purchase said stock at the price per share offered for it by said outside party.

" It is also understood that each party hereto shall build and occupy a dwelling at Helmetta, to suit his taste.

" In witness whereof, we have hereunto set our hands and seals, the day and year first above written.

" George W. Helme, [L. s.]<br>
" George A. Helme, [L. s.]<br>
" John W. Herbert, Jr. [L. s.]

" In presence of Isaac S. Davison."

Subsequently, on the 5th day of September, 1892, he made his last will, by which, among others, he made the following dispositions: By the fourth paragraph, he gave his wife a policy of insurance on his life, for $10,000. By the fifth paragraph, he divided between his three children the proceeds of two policies of life insurance aggregating in amount $20,000. By the sixth paragraph, he gave one hundred shares of the stock of the George W. Helme Company to the trustees under his will, in

trust for his grandchildren. By the seventh paragraph, he gave five hundred and eighty-two and one-half shares of the same stock to his wife for her life, providing that, at her death, it should be counted as part of the residue of his estate. By the eighth paragraph, he devised to his wife, in fee, his homestead at Helmetta, with its furniture, carriages, horses &c. By the ninth paragraph, he gave four hundred shares of the same stock to his daughter Adeline for her life, with the remainder to her issue, and, in default of issue, to her nephews and nieces in the manner pointed out in the paragraph. By the tenth paragraph, he devised certain real estate to his daughter Olivia for her life, with the remainder over, as in case of the bequest of stock to his daughter Adeline. By the eleventh paragraph, he gave five hundred shares of the stock of the George W. Helme Company to his son George for his life, with the remainder over as in case of the bequest and devise, by the ninth and tenth paragraphs, to his daughters. By the twelfth paragraph, he gave and devised one-fourth of the rest, residue and remainder of his estate in fee to his wife. By the thirteenth paragraph, he disposed of the remaining three-fourths of the residue of his estate in this language:

"*Thirteenth.* I give, devise and bequeath all the rest, residue and remainder of my estate, both real and personal, of every name and description, and wherever situated, of which I may die seized, possessed of or in any manner entitled to at the time of my decease, including all properties, securities or moneys hereinbefore given and devised, which may lapse, revert or fall into my residuary estate, to my trustees hereinafter named and·the survivors and survivor of them, and their heirs, successors and assigns forever, upon trust nevertheless and for the uses and purposes and upon the trusts following, viz.: To receive the rents, issues and profits, dividends, interest and income of the said trust estate, and after deducting all necessary and proper charges and expenses, to apply the net income as the same shall from time to time accrue, but not by way of anticipation, as follows: To the use of my daughter, Adeline H. Strater, for life, one-third part thereof; to the use of my daughter, Olivia A. Herbert, for life, one-third part thereof, and to the use of my son, George A. Helme, for life, one-third part thereof; and upon the death of each of my daughters, or of my son, leaving a child or children, or the issue of a deceased child or children, her or him surviving, to convey and pay over one-third part of the said trust property and estate to such child or children of the issue of a deceased child or children, or to such of them and in such estates,

shares and proportions as my daughter or son so dying shall by last will and testament direct, limit and appoint, and, in default of such appointment, then to such child or children and the issue of a deceased child or children equally *per stirpes*, and in case of the death of either of my daughters or son without leaving issue her or him surviving, then to convey and pay over the said one-third part to her or his nephews and nieces, and the issue of such of them as may be dead, in such shares, estate and properties as my daughter or son so dying shall by last will and testament direct, limit and appoint, and in default of such limitation and appointment, then to such nephews and nieces, and the issue of such as may be dead, equally *per stirpes*.

"In case either of my daughters or son shall die before me, leaving issue me surviving, the share herein devised in trust for the use of such daughter or son, I give and devise to such issue, and if any of the children of such daughters or son shall be under age at the time of my decease, the share coming to each of such children shall be payable upon his or her arriving at that age, and in case of his or her death under that age, his or her share shall go to his or her issue, if any, and, if none, to his or her surviving brothers and sisters and the issue of such as may be dead *per stirpes*, and in the meantime my said trustees shall retain and continue to hold the shares of my daughter or son so dying, or so much thereof as shall belong to children under age, and keep the same invested and accumulate the income for the benefit of such child or children, until they shall severally arrive at the age of twenty-one years or sooner die.

"And in case either of my daughters or son shall die before me without leaving issue me surviving, the share herein devised in trust for her or him shall remain in the trust estate for the benefit of my surviving children and their issue, to be held in trust for them as aforesaid, and their shares shall be increased and this will shall be read and construed accordingly."

The fourteenth paragraph is in this language:

"*Fourteenth.* The provisions contained in this will, for the benefit of my wife, are intended to be in lieu and in bar of her right and claim of dower in the real estate mentioned and referred to in the ninth, tenth, eleventh and twelfth clauses of this will."

By the fifteenth paragraph, he appointed his wife, Margaret A. Helme, his son, George A. Helme, and his son-in-law, John W. Herbert, Jr., the trustees under the will, giving them powers and directions, and, among other things, instructed them in this language:

"So much of my stock in 'The George W. Helme Company' as shall be required for the purpose, *is to be held* subject to the terms of the agreement in regard to the sale thereof by me to the said George A. Helme and John W.

Helme *v.* Strater.

Herbert, Jr., dated the first day of October, 1889, and to be applied to the performance of that agreement."

He also empowered them to sell and lease his real estate and to retain his investments for such length of time as they may deem proper. And by a later paragraph, he appointed the same three persons executors of his will, with the express proviso that the appointment of his son and son-in-law executors should not in any manner "discharge, impair or affect" their indebtedness to him or any contract between him and them. By the twentieth paragraph, all former wills are revoked.

It is disclosed by the proofs that in February, 1893, George W. Helme caused a statement of the net earnings of the George W. Helme Company to be prepared by the secretary thereof, from the 1st day of October, 1889, to the end of the year 1892, from which he subtracted the dividends which had been paid upon all shares of stock that did not stand in his own name at the time the dividends were respectively declared, including in such amount dividends on shares which he had transferred to his son and Mr. Herbert, on account of the agreement of October 1st, 1889. Then he divided the remainder by three, in order to determine how much should be credited to his son and Mr. Herbert respectively, to ascertain the basis for the transfer of stock under the agreement referred to, and then debited them with a sum ascertained by multiplying by $300 a number of shares of stock (made up of the shares he then transferred to them and theretofore had transferred to them on account) equal to the credit save in fractional differences, which were made up with cash. His son and Mr. Herbert agreed to this adjustment, and in accordance with it accepted the stock tendered to them.

*Mr. Charles L. Corbin,* for the complainants.

*Mr. Charles D. Thompson,* for Adeline H. Strater et al.

*Mr. William H. Vredenburgh,* for John O. Herbert et al., infant grandchildren of the testator.

THE CHANCELLOR.

The complainants ask instruction upon these questions :

*First.* Whether Margaret A. Helme, the widow of George W. Helme, is entitled to dower in any part or parts of his estate, and, if so, in what part or parts.

*Second.* Whether the agreement of October 1st, 1889, between George W. Helme, George A. Helme and John W. Herbert, Jr., shall be carried out by them, and, if so, by what calculation the amount of net earnings, which is to furnish the basis for the distribution of stock, shall be ascertained.

*Third.* Whether the dividends upon that part of the stock of the George W. Helme Company which will remain in the hands of the executors, subject to the operation of the agreement of October 1st, 1889, are to be wholly paid to the life tenants of the residue of the testator's estate or some part of them accumulated for those who shall take in remainder.

I will deal with the questions in the order in which they have been stated.

As to the first question. It is observed that, by the eighth paragraph of the will, the testator devised to his wife his homestead at Helmetta. If the will had made no reference to the dower right of the widow, it is clear that the statute (*Rev. p. 322 § 16*), in absence of dissent in the manner contemplated by it, would bar the widow of her dower in the testator's entire real estate.

But considered without regard to this statute, what is the legal *status?* The scheme of the will is to first make specific provision for the wife and three children of the testator. They are each to participate in his life insurance, and, except his daughter Olivia, in his stock in the George W. Helme Company. The daughter Olivia and the wife are to take independent gifts of real estate. Then the whole residue of the estate is to be disposed of. The wife is to take one-fourth of it in fee, and the three children the remaining three-fourths through a trust established for the benefit of them and their issue. There are four principal objects of the testator's bounty—his wife and his three children—and it is conspicuous that, in the disposition of

Helme v. Strater.

the residue of his estate, it was his intention that they should participate equally, at least in the usufruct of that residue. One-fourth was to go to the widow and one-third of the three remaining fourths to each child. It is inconsistent with and repugnant to that intention that the widow shall, in addition to her fourth, take dower also in the real estate which composes part of the remaining three-fourths. If she should take such dower the equality of the intended distribution would be destroyed. The law requires that, under such a will, the widow shall elect between its provisions for her and her dower right, the implication being that the provisions for her were intended to be made in lieu of dower. *Griggs* v. *Veghte, 2 Dick. Ch. Rep. 179; Chambers* v. *Storil, 2 Ves. & B. 224; Dickson* v. *Robinson, 1 Jac. 503; Roberts* v. *Smith, 1 Sm. & S. 513; Goodfellow* v. *Goodfellow, 18 Beav. 356; Reynolds* v. *Torin, 1 Russ. 129; Adsit* v. *Adsit, 2 Johns. Ch. 448; Stark* v. *Hunton, Sax. 216; 4 Kent Com. 56; White* v. *White, 1 Harr. 202; Smith* v. *Kniskern, 4 Johns. Ch. 9; Sanford* v. *Jackson, 10 Paige 266; Colgate* v. *Colgate, 8 C. E. Gr. 372; Stewart* v. *Stewart, 4 Stew. Eq. 398; Endicott* v. *Endicott, 14 Stew. Eq. 93; Brokaw* v. *Brokaw, 14 Stew. Eq. 308.*

But we find, in the fourteenth paragraph of the present will, the testator's express declaration that his provisions for his wife are intended to be in lieu and bar of dower in certain real estate, to wit, that which is mentioned in the ninth, tenth, eleventh and twelfth paragraphs of the will, and, under the maxim *expressio unius est exclusio alterius*, it is insisted that the implication is that she is to take dower in real estate disposed of by all other paragraphs. When those paragraphs are examined, it is perceived that the ninth refers exclusively to stock of the George W. Helme Company bequeathed to the testator's daughter Adeline, the tenth to real estate devised to his daughter Olivia, the eleventh to stock in the George W. Helme Company given to his son, and the twelfth to the fourth of the residue of his estate which is given and devised to his widow. In two of the paragraphs, no real estate is mentioned, and in one of the remaining paragraphs the fee in the real estate is given to the widow.

Obviously there is a mistake in this enumeration of paragraphs. The only paragraphs of the will which dispose of real estate are the eighth, tenth, twelfth and thirteenth, and two of those—the eighth and twelfth—devise to the widow in fee. How the mistake arose, whether by transcription from a former will or otherwise, is not apparent. A provision for the revocation of former wills exhibits that such documents existed, and thus, to that extent, lends credence to the conjecture that the error was one of transcription.

Concluding that there is an error in the fourteenth paragraph, so far as the designation of the real estate in which the widow is not to take dower is concerned, we are left, by that paragraph, in this condition : we know that the widow was to be excluded from some of her dower; but, by implication, not from all of it, and we know nothing more. In this situation we turn to the testator's scheme of equality, between his widow and children, in the disposition of the residue of his estate and to the implication which arises therefrom, that the widow shall not have dower in the real estate which, under that disposition, is to go to the children—that is, the real estate disposed of by the thirteenth paragraph of the will. That implication remains in full force, and is not overridden by the indefinite and uncertain implication which arises from the erroneous fourteenth paragraph. It induces the conclusion, upon the whole will, that the testator's intention was that his widow shall not take dower in the lands disposed of by the thirteenth paragraph.

It is not necessary, in the instructions of the complainants, that I shall consider or determine more than that the widow does not take dower in the lands disposed of by the thirteenth paragraph. They have no duties to perform which concern any other lands than those contemplated in that section, and their right to ask instruction is limited by their necessity in the performance of their trust. *Dill* v. *Wissner, 88 N. Y. 153, 160.*

As to the second question. By its fifteenth paragraph, the will requires that the complainants shall hold the testator's stock in the George W. Helme Company to enable them to perform the agreement of October 1st, 1889, between the testator and

his son and Mr. Herbert, and apply it in that performance. Whether or not the agreement was legally obligatory upon the testator, is not the question. This provision is of his bounty, if the agreement be not legally binding upon him.

The agreement was evidently the outgrowth of a desire of the testator to interest and engage his son and son-in-law in the business he had built up, so that that business might be maintained in his family as a source of perpetual profit. He had put the business in control of a corporation. He held nineteen-twentieths of the capital stock of that corporation and the remaining twentieth was owned by his family and employes. He looked upon the company as his creature and his property. He conceived the plan that ultimately he, his son and Mr. Herbert should each own one-third of his nineteen-twentieths of the stock, and that they should all actively participate in the management of the business of the company. It was not his purpose that the young men should at once acquire the interest he intended to give them, because in that event they would not appreciate its value so fully as they would if the acquisition should be gradual and in a manner which would induce them, for a considerable time, to earnestly and vigorously exert themselves for the success of the business. He trusted that during a prolonged exertion they would acquire interest, habits and capacity that would guarantee the perpetuation of the business for the benefit of himself in his old age and his estate after his death. With this apparent purpose in view, he agreed with them that they should give their undivided attention to the business of the company until they should each acquire a one-third interest in his four thousand seven hundred and fifty shares of stock. During that time they were each to receive from the company a salary of $4,000 a year, one as vice-president and the other as treasurer. He and they were each to build and occupy a dwelling at Helmetta, where the factory was and where their attention would not be distracted from the business. At the making up of each annual statement of the earnings of the company, one-third of the net earnings, "less the dividends on the stock held by other parties," was to be credited to each of the young men in an

account created between the parties to the agreement for the purposes of their contract, and then, after the current year's dividends on the testator's stock should be paid, the testator was to transfer to them respectively as many shares of stock as the earnings credited to them respectively would absorb at $300 per share. Each party was to have an equal voice in the management of the business, but all important matters were to be referred to the father, who was "to retain full control and general direction of the business interests of the company."

The agreement is crude and inaccurate in its expressions, yet, except in a single obscurity, it may be readily understood. That obscurity is as to the credit which is to be the basis for the transfers of stock. That credit is to be ascertained by taking the net earnings and deducting therefrom the dividends on the "stock held by other parties." This expression, "stock held by other parties," occurs in the first recital of the agreement, which is intended to define how the credit is to be made up. The recital is, that George W. Helme owns four thousand seven hundred and fifty shares of stock, two-thirds of which he agrees to sell to his son and son-in-law, on the terms that they shall be entitled to one-third of the net earnings of the company, "less the dividends on the stock held by other parties," which shall go to purchase the two-thirds of the stock at the rate of $300 per share. What does the testator mean by "other parties?" Other parties than whom? Other than the parties to the agreement? Other than the son and son-in-law? Other than George W. Helme? The recital speaks for George W. Helme. It lays down his rule for the ascertainment of the earnings in which he is interesting the younger men. Those earnings are the earnings of his stock. His four thousand seven hundred and fifty shares do not constitute the whole stock of the company, and its earnings or profits must be less than the profits of the whole capital stock by the proportion which the shares held by others than he bear to the whole capital stock. He assumes that the dividends will consume the earnings, and, to ascertain the profits of his stock, he deducts from the whole net earnings of the company the dividends upon that part of the stock which he does not own. Thus,

the credit he designed appears to be only the earnings of his own stock, and it follows that, as he transfers his stock to the young men, that which is transferred is to be thereafter considered as belonging to " other parties " and the dividends declared upon it deducted from the credit.   And I understand the further intent to be that those dividends, at least so far as this ascertainment credit is concerned, shall be based upon the entire net earnings of the company.

This is hardly the grammatical construction of the sentence in which the enigmatical words occur, but it is not only what I conceive to be the underlying intent, but is also the practical construction which the parties to the agreement put upon it in their settlement in February, 1893.   In *Chicago* v. *Sheldon, 9 Wall. 50,* Mr. Justice Nelson stated, as a rule of construction of a contract, that " in cases where the language used by the parties to the contract is indefinite or ambiguous, and hence of doubtful construction, the practical interpretation by the parties themselves is entitled to great, if not controlling, influence.   The interest of each generally leads him to a construction most favorable to himself, and when the difference has become serious and beyond amicable adjustment, it can be settled only by the arbitrament of law.   But in an executory contract and where its execution necessarily involves a practical construction, if the minds of both parties concur there can be no great danger in the adoption of it by the court as the true one."   See, also, *Topliff* v. *Topliff, 122 U. S. 121; District of Columbia* v. *Gallaher, 124 U. S. 505; Nearpass* v. *Newman, 106 N. Y. 47, 55; 1 Greenl. Ev. 293.*

This rule has been frequently applied in this state where the description in grants of land are ambiguous or uncertain.   *Jackson* v. *Perrine, 6 Vr. 137; Den* v. *Van Houten, 2 Zab. 61; Opdyke* v. *Stephens, 4 Dutch. 84; Southmayd* v. *McLaughlin, 9 C. E. Gr. 181; Baldwin* v. *Shannon, 14 Vr. 597; Camden and Atlantic Land Co.* v. *Lippincott, 16 Vr. 405.*

Another consideration which should incline the court to act upon this practical construction, is the fact that the agreement is really the promise of a bounty from Mr. Helme crudely ex-

pressed, which should have the interpretation he put upon it and in which his son and son-in-law justly acquiesced.

The complainants will be instructed that the annual credit to George A. Helme and John W. Herbert, Jr., shall be ascertained by deducting from the net earnings of the company the dividends paid upon all stock not standing in the name of George W. Helme, or in the names of the executors of his will, or in the names of the legatees of the one-third of the stock which he bequeathed, their executors, administrators or assigns. Taking such credit as a basis for the distribution of the stock each year, they will transfer to George A. Helme and John W. Herbert, Jr., as many shares as the credit represents at $300 a share, first collecting the dividend of the stock transferred; provided, however, Messrs. George A. Helme and Herbert shall have devoted their whole attention to the business of the company during the year. This annual distribution shall continue until two-thirds of the four thousand seven hundred and fifty shares shall have been so transferred.

As to the third question. It is claimed, in behalf of the infant grandchildren of George W. Helme, that provision should be made to secure them benefit from the stock which is ultimately to be transferred under the agreement of October 1st, 1889. That stock, as has been seen, is to be held by the executors and applied to the performance of the agreement. Until the agreement is performed it remains the property of the testator and constitutes part of his residuary estate, three-fourths of which is ultimately to go to the grandchildren. It will gradually vanish from the residue as the agreement is being executed. The children of Mr. Helme are entitled to the income of three-fourths of the residue during their lives. Their lives may continue during the entire execution of the agreement and until the shares in question shall be fully transferred and the income to the residue therefrom shall cease. In behalf of the infants, it is insisted that it is inequitable and unfair, in view of the fact that the testator evinces an intention that the whole of the residue of his estate shall be successively enjoyed by life tenants and remain-

derman, that the whole income of this vanishing asset shall go
to the tenants for life.

Where a testator bequeaths the residue of his property with-
out specific description, or, in other words, indicating an inten-
tion that it shall be enjoyed *in specie*, first to a tenant for life
and then to a remainderman, and thus manifests that the same
fund shall be successively enjoyed by both, the necessary infer-
ence and established rule in equity are, that it must be invested
as a permanent fund so that the successive takers shall enjoy it
in an equally productive capacity. But where it consists in
whole or in part of property which is in its nature perishable,
which for some reason cannot be converted into money or cannot
be so converted without great sacrifice of both principal and
interest, the tenant for life will not be entitled to the annual
product which the property thus perishing is actually making,
but to interest from the testator's death on the value thereof
estimated as of that time. *Howe* v. *Earl of Dartmouth, 7 Ves.
137; Gibson* v. *Bott, 7 Ves. 89; Fearns* v. *Young, 9 Ves. 549;
Meyer* v. *Simonsen, 5 De G. & S. 723; 21 L. J. Ch. 678;
Brown* v. *Gellatly, L. R. 2 Ch. App. 751; Kinmonth* v. *Brig-
ham, 5 Allen 270; Minot* v. *Thompson, 106 Mass. 583; West-
cott* v. *Nickerson, 120 Mass. 410; Spear* v. *Tinkham, 2 Barb.
Ch. 211; Healey* v. *Toppan, 45 N. H. 243; 2 Wms. Ex. 1393;
2 White & T. Lead. Cas. 676 et seq.* See, also, *Howard* v. *Ex-
ecutors of Howard, 1 C. E. Gr. 486; Hull* v. *Eddy, 2 Gr. 169,
176; Ackerman's Administrator* v. *Vreeland's Executor, 1 Mc-
Cart. 23, 27.* The reason of this rule is the just consideration
that the testator has the interest of the successive takers equally
in view and intends that there shall be equality in their respect-
ive enjoyments.

I think that the rule is applicable to this case. The stock in
question cannot be sold, for the testator expressly directs that it
shall be held to answer a designated purpose, which, in all
probability, will consume it within a few years. While it
remains in the residue it will yield large dividends. It is,
therefore, a valuable and at the same time a perishable asset.
The testator does not manifest an intention that it shall be

enjoyed *in specie.* It is not to be held for that purpose. It is swept into the residue by this general language, "the residue and remainder of my estate, both real and personal, of every name and description," and no specific reference is made to its enjoyment while it is in the residue. The trustees are to collect the "rents, issues, profits, dividends, interest and income of said trust fund" and apply it to the life tenants' use. Here words are used which are applicable to income from investments of every character which may enter into the aggregate mass with which the testator deals—that is, "said trust fund." They are not meant to prescribe the holding of the securities as the executors find them—*in specie.* They are to be taken together, as intended to give authority broad enough to enable the trustees to collect all income. That holding *in specie* for the benefit of the successive takers was not intended is manifested in the power given to the executors to hold or change the investments at discretion. As I have already said, the stock in question is not to be held for enjoyment *in specie*, but for another purpose. It is true that the wearing out of the value of the stock is contingent upon performance of the agreement by the son and son-in-law, but that contingency should not interfere with the application of the rule. If the contingency should happen that they do not perform, any accumulation of surplus dividends in the hands of the trustees will constitute a fund to enable the court to afford the life tenants their legal and equitable rights.

The value of the testator's interest in the stock in question is not $300 for each share. His agreement with his son and son-in-law does not contemplate that he will receive that sum. That price is merely used as a factor in a mathematical calculation which is to control the distribution of the stock in question if the son and son-in-law perform the contract upon their part.

The value of the testator's interest must be ascertained by reference to the probable value of the dividends in future upon the several shares of stock in question, until they shall be transferred.

It is, I think, impossible to define a rule which will accurately determine the value of the stock in question to the testator's estate

at his death. It is uncertain what dividends will be paid upon it in the future and how long any part of the stock will remain in the estate. Both these uncertainties are created by the fluctuations of the business of the company. Among the cases I have examined I have not found one presenting precisely this situation. Those which I have cited, which in other particulars are similar to this, were presented to the courts after the entire profits of the wearing-out asset had been realized by the trustees. In those cases the direction was to ascertain a sum which, if received at the testator's death, would, with interest and making annual rests, amount to the sum actually received at the time it was received. That sum was to be invested as principal and the remainder of the sum actually received was distributed as income. In the present case but a single year's profit has been received. What will be received in the future is unknown. It is out of the question to predicate the receipts of future years upon the receipts of the past year. They may be more or may be less. It will not do to wait until the entire profit shall have been realized, for such a delay would be a hardship to the life tenants. I therefore think it is proper that the rule stated should be applied to each dividend as it is received. The sum going to principal will be invested and the income from such investment will go annually, together with the distributions from the several dividends, calculated according to the rule, to the life tenants.