By the bill filed herein the executors of the estate of Job Scott, deceased, seek instruction in aid of their trust duties. *Page 245 
The primary issue is whether the widow of testator is entitled to her claim of dower in testator's real estate.
The will contains certain devises and bequests to testator's wife of real and personal property and by a subsequent clause provides as follows:
"Eighteenth. I order and direct that all the gifts, devises and bequests herein contained to my wife, whether directly or to her in trast for her, are in lieu of her dower in all of my real estate."
The present doubts of the executors arise from the circumstance that the widow of testator did not file with the surrogate a dissent to receive the lands so devised to her in satisfaction and bar of her right of dower in the other real estate devised by the will, within six months after the probate of the will, pursuant to the terms of section 16 of our Dower act. 2 Comp.Stat. p. 2048. A dissent of that nature was filed by her subsequent to the statutory period.
1. The first inquiry is whether the provisions of that statute contemplate a case in which the will specifically provides that the devise to the wife is in lieu of her dower. If the statute embraces a case of that nature, her dissent was not filed in time; if not, there is no statutory limitation of time within which the widow must elect to take against the will.
I think it clear that the act has no application whatever to any case in which the will specifically provides that the devises to the wife are in lieu of dower. I deem it unnecessary to here quote the section of the act; it seems sufficient to say that by its specific terms the act applies only to cases in which the testator has not by his will expressed whether the devise to his wife is intended by him to be in lieu of dower or not. The will here in question specifically provides that the gifts to the wife are in lieu of her dower; the act by its very terms has no force in a case of that nature. The contention that the act is operative in the present case is measurably based upon language found in the opinion of the learned chancellor in Stark v.Hunton, 1 N.J. Eq. 216 (at p. 228), in which he says: "The object of the statute was *Page 246 
to remedy the evil, [the difficulties experienced in ascertaining testator's intent] and to compel the widow, in all cases where any lands or real estate had been devised to her, to elect between the bounty of her husband and her legal rights, and to prevent her enjoying both; and I am of the opinion that the object of the statute is fully answered, so far as it concerns all lands and real estate embraced in the will of testator." It will be noted that by the will there in question testator did not specifically express whether the devise to the wife was intended to be in lieu of dower or not. Accordingly the general statement that the statute applied "in all cases" was beyond the issues there involved. But in the subsequent case of English v.Executors of English, 3 N.J. Eq. 504, the same learned chancellor (at p. 509), in a case in which the will did provide that the devise to the wife was in lieu of her right of dower in his estate, expressly determined, that the case was not within the act for that very reason, and explained that in Stark v.Hunton there was not such an intention expressed by testator. In the prior case of Morgan v. Titus, Ibid. 201, the same chancellor appears to have applied the statute in a case in which testator had provided that the devise to his wife should be in lieu of dower, but that circumstance does not seem to have been made an issue of the case.
The purpose of the statute has been uniformly recognized to be to remove the evil of necessary construction to ascertain from circumstances of the particular case whether or not testator intended the devise to his wife to be in lieu of dower. If the will expressly provided that the devise should not be in lieu of dower, that would be conclusive and no necessity for the statute existed; in like manner if the devise was expressly given in lieu of dower, that also would be conclusive and no necessity for the statute existed. Thus the plain language of the act and its recognized purpose are in entire harmony; a circumstance not always found in legislative enactments. An examination of the other cases cited by counsel discloses no other view. Accordingly it is my determination that the failure of the widow to file her *Page 247 
dissent pursuant to the statute within six months from the date of the probate of the will, was in no way operative as a bar to her right of dower in her husband's estate. See, also, Griggs,Admr., v. Veghte, 47 N.J. Eq. 179, 183; Helme v. Strater,52 N.J. Eq. 591, 598; Hill v. Hill, Exr., 62 N.J. Law 442, 444.
2. It is further urged that the widow has elected to take under the will and cannot now claim dower.
It is recognized that by her engagement or acquiescence a widow may elect to take under the will of her husband in such manner as to deny to her the right to subsequently enforce a claim of dower. But a bar of that nature has always been carefully protected and circumscribed. The right to dower is a legal estate in freehold. To bar its recovery "the general questions are, whether the parties acting or acquiescing were cognizant of their rights; whether they intended to make an election; whether they can restore the individuals affected by their claim to the same situation as if the acts had never been performed; or whether these inquiries are precluded by lapse of time." "There must be something more than a mere intention to elect." "There must be some decisive act of the party, with knowledge of her situation and rights, to determine the election; or there must be an intentional acquiescence in such acts of others as are not only inconsistent with her claim of dower, but render it impossible for her to assert her claim without prejudice to the rights of innocent parties." English v. English, supra (at pp. 509,510). See, also, Hill v. Hill, supra. No one is to be prejudiced in the present case by the widow's present determination to take against the will, provided she restores to the estate the advances which have been made to her. The testimony is in conflict as to certain conversations between the widow and the executors; but it seems reasonably clear that the widow has at all times been much in doubt as to whether it would be to her best interests to take under the will or against it, and it can scarcely be accepted as a conclusive fact that the several advances made to her for her support were fully regarded by her as a *Page 248 
final determination on her part to waive her claim to take against the will.
3. Sometime before his death testator owned a number of building lots and sold them to various parties, receiving parts of the purchase-money and executing written contracts of sale which provided for the payment of the balances of the purchase prices in installments and the delivery of deeds to the several parties when the full installment payments were completed. Deeds in conformity to these several agreements were then executed and acknowledged by testator and his wife to these various purchasers, and these deeds were then deposited with testator's bank with instructions to the bank to receive for testator the purchase-money as the several installments were paid, and as each contract was paid in full to deliver to the purchaser the deed for the property called for by that contract. Some of these contracts were paid in full and deeds delivered by the bank to the purchasers in testator's lifetime. As to these no question is herein raised. Payments to the bank have been made on many of the contracts; these payments were some made in testator's lifetime and some since his death. Some of the contracts were executed by testator and his wife, others by testator alone; but deeds were executed by testator and his wife in all cases and those not yet delivered are in the possession of the bank. The duty of the executors touching these several transactions are made an inquiry herein, since the wife now asserts a dower interest in the several lots or their proceeds.
As to the deeds delivered in the lifetime of testator no contention is made in behalf of the widow. As to deeds now held by the bank in cases in which the wife joined with her husband in executing the contracts of sale as well as the deeds, no substantial claim can be made by her, since she has contracted to sell. As to the remaining deeds it is my determination that those delivered since the decease of testator are free from the widow's claim of dower. As to the deeds still in the possession of the bank, I determine it to be the duty of the executors to cause the remaining installments to be collected and the deeds to be delivered by the bank *Page 249 
when the installments are fully paid, and in these transactions I hold that the widow can not properly assert her claim for dower. In cases in which it is found that the installments cannot be collected and the purchasers are obliged to surrender their contracts, the widow's dower right will remain.
These conclusions flow from the recognized doctrine of relation, applied in cases of this nature for the general purpose of affectuating the intention of the parties and to thus promote justice. The controlling inquiry in cases of this class is whether the deeds were executed and given to the custody of the bank with the intent that they should be delivered to the respective parties when full payment for the lots should be made, and it is held to be immaterial whether the deposit of the deeds was made under a formal escrow agreement or in the manner in which the deeds here in question were left with the bank. Black
v. Shreve, 13 N.J. Eq. 455; State Bank v. Evans,15 N.J. Law 155. When so delivered with that intent and the death of the vendor holding the legal title intervenes before the condition is performed, the subsequent performance of the condition entitles the vendees to the deed and their titles will be protected as of the date of the deposits, in the absence of intervening equities. This was early held in Perryman's Case, 5 Coke's Rep. 84a (77Eng. Reprint 181), which case is cited with approval in StateBank v. Evans, supra (at p. 160). In Coare v. Giblett, 4East 85, 94 (102 Eng. Reprint 762 — at p. 763), the rule as stated in Perryman's Case is later quoted, approved and applied. In 21 C.J. 890 § 36C, the American cases are collected in support of the various aspects and application of the following text:
"An instrument held by a third person as an escrow usually does not take effect until the performance of the condition or the second or final delivery. There are, however, cases where the second delivery, whether actual or constructive, operates retroactively, and by relation back to the first delivery or deposit, is substituted for it in time and effect. This rule has been applied where either of the parties to *Page 250 
the instrument dies after it has been deposited as an escrow and before the condition has been performed and final delivery made, whether the death is that of the grantor, of the grantee, or of both parties. Likewise the delivery will relate back to the deposit if in the meantime one of the parties becomes insane or, being a feme sole, marries. Any title acquired by the grantor between the deposit and the delivery passes by such delivery to the grantee; and if the latter dies before final delivery, the depositary may make delivery to his heirs and it will be held ordinarily to have taken effect in the ancestor so as to transmute title through him to the heirs by inheritance, where nothing intervenes to prevent. Different reasons for the adoption of this fiction are assigned by the courts. By some it is said to be equitable in its nature and intent and devised to promote justice and hence will never be applied where injustice would result. By others it is said to be for the general purpose of effectuating the intention of the parties; and in case of deeds in consideration of love and affection, it has been said to be resorted to by some courts for the purpose of holding the transaction as in the nature of a testamentary disposition. It has been maintained that the fiction of relation back to the first delivery may be resorted to in courts of equity to ward off intervening claims or liens of the depositor's creditors; but it seems to be the prevailing rule that, in the interval of time between the first and second delivery, title remains in the grantor subject to the claims of his creditors, and that this doctrine of relation cannot be applied for the purpose of defeating such intervening claims. It has also been held that the fiction of relation will not be applied where it will cause a violation of a contract. It has, however, been resorted to for the purpose of supporting a sale of the land by the grantee after the deposit and before the final delivery, of cutting off dower of the grantor's wife, and of giving grantee priority over an intervening purchaser with full knowledge of all the facts, but not over such a purchaser without such notice. *Page 251 
"Where both parties to a deed in escrow abandoned the transaction, subsequent delivery of the deed by one obtaining equitable title from the grantor was not a delivery in pursuance of escrow instructions, and passage of title did not relate back to the time of delivery in escrow."
The text of 10 Ruling Case Law p. 640, touching relation back to the first delivery is as follows:
"While it is true that ordinary title is not changed by an escrow until it is rightfully delivered, or until such conditions have arisen that it of right ought to be delivered to the grantee, yet this general rule does not apply when justice requires a resort to the fiction of an earlier delivery. Hence, relation back to the first delivery so as to give the deed effect from that time is allowed in cases of necessity, to avoid injury to the operation of the deed from events happening between the first and second delivery. The usual instances in which this relation back is permitted are where the grantor, being a femesole, marries, or, whether a feme sole or not, the grantor dies, or is otherwise rendered incapable of executing the deed at the date of the second delivery. And so, when it clearly appears that the grantor placed a deed with a depositary, to be kept continuously by him until after the grantor's death, and that it was then to be delivered to the grantee, upon the grantor's death, the estate vests in the grantee from the time of the execution of the deed. The fiction of an earlier delivery by relation is adopted only to prevent a manifest hardship and wrong. If it is not required for any such purpose, it is not indulged, and the deed operates according to the truth of the case. The second delivery cannot take effect by relation where the grantor is able to make, and the grantee able to receive, such second delivery absolutely. The whole law as to the relation back of an escrow in case of subsequently occurring death or disability is traced back to Sheppard's Touchstone and one or two ancient authorities which treat of it theoretically and without explanation. But so far as the authorities go, ancient or modern, they all assume that the relation back is founded on the unintended or unexpected occurrence of some disability *Page 252 
without which the second delivery would have been the act, at its date, of the grantor prevented without his original design. While in some jurisdictions it has been held that the doctrine of relation back to the first delivery of a deed deposited in escrow may be applied where the rights of creditors have intervened between the date of the first delivery and the time of the second delivery so that the grantee may take title free from any liens of creditors, yet the weight of authority is apparently to the contrary, and intermediate rights acquired by third persons in good faith are deemed to be valid against the second delivery. Thus it has been held that the grantor's title may be levied on, and sold on execution, or otherwise dealt with so as to cut off the escrow."
The text of 11 Am. Eng. Encycl. L. (2d ed.) 346, is as follows:
"Death or disability of depositor. Thus, where an instrument is delivered as an escrow, and afterwards, before the second delivery, the depositor dies, or from some other cause becomes incapable of making a delivery, the instrument will be considered as taking effect from the first delivery, since otherwise the instrument would be defeated by the intervening incapacity."
Defendants cite Teneick v. Flagg, 29 N.J. Law 25, in which case (at p. 31), the following language is used: "It [the deed] was delivered in escrow; but the conditon or event on which it was to be delivered never happened in her lifetime, and the deed died with her." No authority touching the latter expression is cited, and obviously it cannot be understood as meaning more than at the death of the vendor the legal title necessarily vested in her heirs, but of course subject to any equitable rights of the vendee. As already pointed out, the same court in State Bank v.Evans, supra, recognized an equitable right of the vendee to take under the deed as of the date of its first delivery to the depository, upon the performance of the condition, notwithstanding the death of the vendor prior to the date of performance. *Page 253 
In the present case it is entirely clear that these deeds were executed by testator and his wife and delivered to the bank with the consummated intent and purpose that the vendees should be privileged to complete the stipulated payments to the bank and then receive these deeds from the bank to convert their equitable estates into complete legal titles as of the prior dates. In such circumstances the defined principles of equity in effectuating intent of the parties should recognize any legal estate transmuted to heirs by the death of the vendor, who merely held the naked legal estate, as subject to these rights of the vendees as intended by the parties.