CALVIN H. BLACK *vs.* ANNIE M. HERRING, and others.

*Construction of Will—Punctuation—Forfeiture of Benefits under Will.*

Where a testatrix devised certain property to her two daughters in trust, to hold the same, and to collect the rents, income, and proceeds thereof, and pay the expenses, and after paying out of the proceeds of said property one hundred dollars to H. " of Grafton, West Virginia, should they think proper so to do to pay over from time to time the net income and proceeds of said property " to her son during his life, with remainder to his children, a trust is created for the benefit of the son, although the omission of a comma after the words " so to do," would seem' to invest the trustees with discretionary power in regard to paying over the proceeds to their brother.

A devisee under a will providing that any one who undertook to defeat its provisions, should forfeit all claim to participation in its benefactions, does not by filing a bill to obtain the true construction of the will and codicil, and the enforcement of his rights thereunder, seek to thwart the designs of the testatrix, so as to forfeit all benefit under her will.

APPEAL from the Circuit Court No. 2 of Baltimore City.

The bill in this case was filed by Calvin H. Black against his two sisters, Annie M. Herring and Mary E. Deringer,

as legatees and trustees under the will of their mother, and their husbands, asking that said will might be construed by the Court, and the rights and interests of the plaintiff in the estate of the testatrix determined; and that a decree might be passed for the sale of the trust property, and for the investment of the proceeds, to be held upon the trusts set out in said will, and for an account of the income of the trust property since the death of the testatrix, and that the net amount thereof might be decreed to be paid to the plaintiff. From a decree of the lower Court(WICKES, J.) dismissing the bill, this appeal was taken. The case is stated in the opinion of this Court.

The second clause of the codicil referred to in the opinion of the Court is as follows:

" I further will that in case any person or persons to whom any legacy is given, or to whom any benefit from, or by reason of my said will or this codicil thereto shall come, shall commence any suit or proceeding, or file any caveat against this my will and codicil, or by any means sue and disturb or cause to be sued or disturbed my executor or trustees herein named, or any person to whom anything is by me given by my said will or codicil from recovering possession and enjoying what is by me so given in such manner as is therein mentioned, then my will is that all and every legacy and legacies herein by me given to any such person who shall so sue and disturb as aforesaid, shall cease and determine and be utterly void, and that then and from thenceforth I do give and bequeath all and every the bequests or legacies which by my will or codicil I had given to such person or persons, or in trust for such person or persons, unto my granddaughters, Iona and Aldine Herring, share and share alike absolutely."

The cause was argued before ROBINSON, C. J., BRYAN, FOWLER, ROBERTS, McSHERRY, BOYD and BRISCOE, J.

---
Black *vs.* Herring, and others.
---

*J. J. Wade*, for the appellant.

*Augustus  C.  F.  Boehme*, and  *C.  D.  Barnitz*, for the appellees.

ROBERTS, J., delivered the opinion of the Court.

This case comes here on appeal from the decree of the Circuit Court No. 2 of Baltimore City, on a bill filed by the appellant against the appellees to obtain the true construction of certain provisions of the last will and codicil thereto of Elizabeth W. Black, late of said city.  The chief controversy arises out of the proper construction of the fourth clause of the original will, which reads as follows:  " I give, devise and bequeath all that lot, property and premises situate on the south side of Lexington street, which by deed dated the tenth day of July, 1866 * * * * I acquired from William W. McKaig, to my daughters, Mary E. Derringer and Annie M. Herring, and the survivor of them, and their successor in the trust, and executors, administrators, and assigns (the sub-reversion (and sub-groundrent) in the back of the above mentioned lot being included in this bequest).  In trust and confidence, however, to hold the same and to collect and have collected, receive and receipt for the rents, income and proceeds thereof, and pay all taxes, ground rents, insurance, and other expenses therein (including a commission of five per cent. for their services), and after paying out of the net proceeds of said property and premises, the sum of one hundred dollars to Mrs. Holmes, of Grafton, West Virginia, should they think proper so to do to pay over from time to time the net income and proceeds of said property to my said son, Calvin H. Black, for and during the term of his natural life, and to hold the same in further trust, that upon the death of my said son, that then the said property and premises shall go to, and become the property and estate

of his children and descendants then living, share and share alike *per stirpes.*"

This controversy is certainly a very narrow one, and depends solely upon a question of punctuation. We are called upon to determine the meaning and effect of the particular location of the " comma " in that part of the above clause, which reads as follows: " And after paying out of the net proceeds of said property and premises, the sum of one hundred dollars to Mrs. Holmes, of Grafton, West Virginia, should they think proper so to do to pay over from time to time the net income and proceeds of said property to my said son Calvin H. Black, for and during the term of his natural life, &c."

It is contended by the appellees that the " comma " appearing after the word Virginia, invested the trustees with discretionary power over the trust fund, and authorized them " to pay over from time to time the net income and proceeds of said property to my said son Calvin H. Black, &c.," or not, as they might think proper so to do. This, we think, would be giving to a mere matter of punctuation a controlling force in the construction of wills, never yet, so far as we are aware, sanctioned or recognized in any authoritative statement of the law. This Court, in *Weatherly vs. Mister*, 39 *Md.*, 629, has said that punctuation may perhaps be resorted to, when no other means can be found of solving an ambiguity, but not in cases where no real ambiguity exists, except what the punctuation itself creates. In such cases it will not be allowed to confuse a construction, otherwise clear. It is conceded that if the "*comma*" had followed or been located at the end of the phrase, " should they think proper so to do," then the discretion to be exercised by the trustees would have related solely to the payment of the one hundred dollars to Mrs. Holmes. But we think the intent and meaning of the testatrix is clear beyond question, and the language used ought to be given its ordinary meaning, without regard to the location

of the comma. If she did not mean that the rents of said trust property were to be for the benefit of her son Calvin, would she not have made some disposition of them? We think it is a fair inference to be drawn that she would. This trust was not certainly created for the benefit of Mrs. Holmes, and as the testatrix had already provided for her two daughters, it was but reasonable that in making a final disposition of her estate, she would in some way remember her only son, even though unworthy. He might have forgotten her; but the converse is seldom ever true, that the mother forgets the son, unless improperly influenced by interested parties. So far as we have been able to discover, there is very little in the record, if anything, which reflects upon his character as a son. We think the language of the will is sufficiently clear to enable us to say with certainty that it created a trust for the benefit of the son, and we must here state that the trustees have signally failed to recognize and discharge their duties in the premises. They have allowed more than seven years to pass since the death of their mother without accepting either horn of their dilemma. They have neither paid Mrs. Holmes nor their brother one farthing.

The next question presented by this appeal relates to the true construction of the first and second clauses of the codicil. By the first clause of the codicil, the testatrix revokes and annuls the devise of the lot on the south side of Lexington street, which is the same lot mentioned in the fourth clause of the original will, and then provides that, " the sub-reversion in the lot of ground, on the rear of said Lexington street lot, which by deed made by myself and husband, was sub-leased to Ann Bouldin, wife of Randolph Bouldin, at the rent of twenty-five dollars per annum, and also the said rent reserved (exempt from any liability or charge for, or on account of the original rent payable out of the whole lot, (the payment of the original rent it is intended shall be a charge upon the front or residue

of said lot alone,) I give and bequeath to my daughter, Annie M. Herring, for and during her life, in the same manner and estate as the property situate on the north side of West Fayette street, which I acquired from Cyrus Gault * * * * and at her death I will that the said yearly sub-rent of twenty-five dollars and sub-reversion shall pass to the same persons in the same manner and estate as is expressed and directed in regard to said property on north side of Fayette street, the bequest of this property to be in all respects the same as that."

She then further provides that, " should it be necessary in administering my estate to sell any of my leasehold property whatsoever, in order to obtain money to meet debts, liabilities, costs or charges incident to the settlement of the same, I will and direct that the residue or balance of the said Lexington street property be first sold, and that the net proceeds thereof shall be used for that purpose; and I hereby authorize the sale of said property therefor, and after satisfying thereout all of said debts, costs, charges and liabilities, should any balance of said proceeds remain, I will and direct that such balance or residue of proceeds of said property shall be invested in safe and productive bonds, stocks or ground rents, and I will and direct that such residue as invested, and however invested, shall go and pass to the same persons, and be held in the same manner and estate, in the same trust, to the same trustees and uses, and in every respect pass and be held as the entire property (on Lexington street) is directed by my said will to pass, be held and enjoyed."

It is apparent that the effect of these provisions of the codicil upon the fourth clause of the will, has been to give to Mrs. Herring the sub-rent on the rear part of the Lexington street lot, and to this extent the *corpus* of the trust estate created by said fourth clause of the will has been diminished; and also to charge the front part of the same lot with the payment of any debts, which the tes-

tatrix might owe at the time of her death, and all costs incident to the settlement of her estate, which her assets, other than the leasehold property, failed to pay, and in the event of any such deficiency, the Lexington street front is directed to be sold for the payment of the same. She then proceeds, as stated in the codicil, just quoted, to direct how the residue of the proceeds of sale shall be disposed of. But the emergency upon the happening of which the Lexington street lot was to be sold has never occurred; and the personal estate having been finally settled, and the defendant trustees by their answer admit that on the 4th of October, 1888, the said lot was, in pursuance of an order of the Orphans' Court of said city, transferred to the defendant trustees by the executrix, acting in pursuance of the terms of said will, and they continue to hold the same, and have since the date of said transfer, collected the rents therefrom, paid the expenses thereof, and kept an exact account of both.

No necessity has, therefore, arisen requiring the sale of the Lexington street front, and it must, in its present form, be considered as the *corpus* of the trust, and said trustees must account for the rents or accretions of said property, and settle their account in the Court below in accordance with the views herein expressed. There yet remains to be disposed of, the contention of the appellees, that by the provisions of the second clause of the codicil, the appellant, by his conduct in filing this bill, has placed himself in conflict with the provisions of said clause, and of the original will, and forfeited all claim to participation in the benefactions of said testamentary papers. It is a mistake to assume that the appellant in filing this bill, by which he seeks only the true construction of said will and codicil thereto, and the enforcement of his rights thereunder, is seeking to thwart the designs of the testatrix or in any manner to interfere with the due execution of her wishes as expressed in her testamentary papers. It would be an

anomaly in the law, and a very unjust restriction, if such a contention could be upheld.

It follows from what we have said, that the decree of the Court below must be reversed, and the cause remanded that further proceedings may be had, in accordance with this opinion.

<em>Decree reversed, with costs, and<br>cause remanded.</em>

(Decided 14th March, 1894.)