[Civ. No. 9580. Second Appellate District, Division One.—May 14, 1934.]

In the Matter of the Estate of JOSEPH L. KLINE, Deceased. ARTHUR I. KLINE et al., Appellants, v. CITIZENS NATIONAL TRUST & SAVINGS BANK OF LOS ANGELES, as Executor, etc., Respondent.

G. Harold Janeway, George I. Devor and Walter S. Hilborn for Appellants.

Hunsaker & Cosgrove, Cosgrove & O'Neil and Crop & Crop for Respondent.

HOUSER, J.—In this matter it appears that one Joseph L. Kline died leaving a last will that included the following provision with reference to the disposition of the residue of his estate, to wit:

"All of the rest and remaining net income received and derived from the trust estate, and after the death of Charles S. Kline and/or Carrie ·Pedder the income to which he or she would be entitled, if living, shall go and be paid, used and/or disbursed by my said Trustee to such persons, charitable organizations and/or corporations situated in the City of Los Angeles, County of Los Angeles, State of California, organized for the purpose of aiding and for the betterment of crippled children, the persons, charities or organizations that shall receive the benefit of this charitable trust to be selected by my said Trustee in its absolute and uncontrolled discretion. This trust is created perpetual and is to be known as the Joseph L. and Minnie S. Kline Charitable Trust for Crippled Children in the City and/or County of Los Angeles, State of California."

In due course, two of the natural heirs of the deceased presented their petition, and one of such heirs presented his separate petition, to the superior court, wherein it was prayed that said court place its construction particularly upon that provision of the will by which the residue of the estate of the deceased was directed to be paid "to such persons, charitable organizations and/or corporations . . . organized for the purpose of aiding and for the betterment of crippled children, the persons, charities or organizations that shall receive the benefit of this charitable trust to be selected by my said trustee in its absolute and uncontrolled discretion."

At the same time, by likewise separate petitions to said court, the said petitioners also prayed for distribution to each of them of a legacy of the sum of $1,000 left to each of them by the said testator in his said will.

After answering the allegations contained within each of such petitions, the executor of the will pleaded a separate provision of the will of said deceased wherein in substance

it was provided that should any devisee or legatee named in such will seek "to impair, invalidate or set aside its provisions", etc., such devisee or legatee should receive the sum of one dollar and no more; and thereupon the executor prayed that because of the fact that the petitioners had sought to have the terms of the will construed by the court as aforesaid, it be decreed that such petitioners had forfeited all rights and benefits which otherwise would have accrued to them, save and except the sum of one dollar.

After a hearing on said petitions, the court construed the paragraph of the will in question and in effect ruled that a charitable trust was thereby created for the purpose of aiding, and for the betterment of, crippled children. In effect, the court also ruled that by having instituted the judicial inquiry with reference to the construction of such paragraph, each of the petitioners therein had forfeited his legacy of $1,000 and was entitled to receive the sum of one dollar and no more. It is from each of the ensuing separate orders or decrees rendered by the court that the instant appeals are taken.

It is conceded by the parties that, unless the words of the will to which attention has been directed are sufficient to create a valid charitable trust, the rule against perpetuities will prevent the operation of the instrument as a will in that regard. In that connection, the issue is clearly recognized by the respondent in its brief wherein it makes the declaration that: "Appellants assert, and we do not deny, that if the income from a perpetual trust may, without violating the terms of the trust, be used either for charitable or noncharitable purposes, the entire trust is void under the constitutional prohibition against perpetuities except for eleemosynary purposes. The sole question here involved is, does the will permit any of the income of said trust to be used for noncharitable purposes?"

By the provisions of a written stipulation filed by the respective parties to the inquiry at the time when the several petitions came on for hearing before the court, in substance it appears that at the date of the execution of the will, and continuously thereafter, there were within the city of Los Angeles certain organizations of persons specializing for profit in the "aiding and betterment of crippled children"; and likewise during all of said time, within the

said city at least one incorporated organization, to wit: Societe Francaise de Bienfaisance Mutuelle de Los Angeles (familiarly known as the French Hospital), that operated without profit in "aiding and bettering" those crippled children only who were members of said corporation. By said stipulation it also was agreed by the parties that the said corporation "is not a charitable institution but is the same corporation mentioned in the *Estate of Dol,* 182 Cal. 159 [187 Pac. 428], and was organized and operated at all times as in said decision set forth".

Reverting to the particular language of the provision of the will in question, it will be noted that, as of first impression, the designated beneficiaries of the proposed trust are: (1) persons; (2) charitable organizations; and (3) [charitable] corporations; or (4) unclassified corporations. But in effect it is argued by the respondent that such language should be construed to mean that each of such beneficiaries is "charitable"; which conclusion is reached in consequence of the suggestion that the word "charitable", which follows the word "persons" and which immediately precedes the word "organizations", should be held to apply to and modify each of the other designated proposed beneficiaries, to wit: "persons, and/or corporations".

Although certain rules of construction and authorities generally are cited by each of the parties herein which to some extent furnish a guide for a correct decision of the question here at issue,—in none of such authorities was language used in a will that is either identical with or analogous to the language here under consideration. To refer to such cases and to attempt to distinguish each of them from the instant case would serve no useful purpose. It may suffice to state that in none of them was a word therein placed as is the word "charitable" herein held to apply either to a word placed like "persons" which precedes the proposed (modifying) adjective, or to words which follow such qualifying word that are immediately preceded by the word "or". No rule of construction to which the attention of this court has been directed either requires that the word "persons" be modified by the word "charitable", or even admits of the word "persons" being so modified. As to the words and character "and/or corporations", which follow the words "charitable organizations", it may be that

if the word "or" had been omitted, the word "charitable" might be held to designate the kind of corporations that were intended; but considering the use of the disjunctive "or", it becomes obvious that a class of corporations other than charitable and which are unauthorized by law to take charitable bequests or devises, was included as a possible beneficiary of the trust.

Respondent directs attention to other language used by the testator in his will, in which he refers to "the amount devised for charity"; to "said charitable trust"; as well as to other so-called "earmarks" of a similar character;—whereupon respondent invokes the rule that an ambiguous phrase, clause or paragraph in a will may be explained by and with reference to other clear, pertinent expressions that may be contained therein. In other words, if we may assume the existence of a condition which in fact does not exist, we then may have an infallible remedy therefor; but the difficulty encountered when such rule is attempted to be applied herein is that the questioned language presents no ambiguity. It is clear enough that in the language actually used by the testator, the only way by which any ambiguity may be discerned therein is when a rule which has no application to the situation is attempted to be applied.

Respondent makes the suggestion that, since legacies and devises for charitable purposes "are the favorites of the courts, . . . the language should be liberally construed so as to create a valid trust if possible". Even though the fact be conceded that when in the course of the operation of their proper functions in cases of this kind, in some scattered instances the courts may seem to have strained legal principles in decreeing the creation of charitable trusts, it cannot be accepted as a correct statement of a legal or equitable principle to say that in such situation the courts, as an institution, are required to show partiality in favor of litigants who would be benefited by such declaration. On reflection, it should be apparent that the courts can have no fixed policy which will admit of the operation of a principle by which one party to litigation will be favored to the detriment of the other party therein. Manifestly, even-handed justice cannot be administered on the basis of partisanship, expressed or indicated, either in favor of, or in

antagonism against, either of the parties to the litigation. Nor may the subject matter in controversy in any manner affect the scales of justice. The business of the courts is to administer justice as nearly as may be in accordance with fixed rules of law and procedure, aided wherever and whenever proper and necessary by established and governing principles which relate to equity jurisprudence. Any intentional departure from such a course, no matter how worthy the objective, must result in reproach to the surest foundational support of our government. ▮ Hence, in the instant inquiry, however obvious it may be that what the testator himself had in mind was to dispose of certain of his property in a benevolent manner, even though it may have been ''for the purpose of aiding and for the betterment of crippled children'',—his good intentions in the matter cannot be carried into effect by the creation of a charitable trust therein in the face of his plain language which permits his trustee to devote his estate, or some portion thereof, to purposes that are legally noncharitable. It may be that the testator probably thought that what he had in mind was to create that which in the law constituted a charitable trust; but the estate of the testator is bound by the specific and express directions contained in the testator's will, rather than by inconsistent references or ''side remarks'' interspersed therein. (*Taylor* v. *Keep*, 2 Ill. App. 381; *In re Sutro*, 155 Cal. 730 [102 Pac. 920]; *In re Walkerly*, 108 Cal. 627 [41 Pac. 772, 49 Am. St. Rep. 97]; *In re Vance*, 118 Cal. App. 163 [4 Pac. (2d) 977].)

In *Estate of Doane*, 190 Cal. 412, 415 [213 Pac. 53, 54], it is said: ''The decedent having made an invalid provision in clear, unequivocal language, the courts are without power to alter that language to express what may have been in the testator's mind but was not attempted to be expressed by him, however beneficent such unexpressed intent may have been. 'It has been said of all wills, that the testator's intent is to make a valid disposition of his property. . . . But a court is not therefore authorized to modify or vary the plain language of the testator, and thus create a new and valid will for him, even if it were certain that the testator would have adopted the interpretation of the court, had he known his own attempt was invalid.' (*Estate of Walkerly, supra,* 627, 659.) ''

And again, in the *Matter of Frasch,* 245 N. Y. 174 [156 N. E. 656], where the bequest was carefully "earmarked", among other things, the court said: "So, too, a trust which may include social, educational or moral benefit, confined to members of a corporation and in which the general public has no direct participation, has been declared a trust for a private use. (*Attorney-General* v. *Hewer,* 2 Vern. 387; *Carne* v. *Long,* 2 De Gex, F. & J. 75; *Miley* v. *Attorney-General,* [1918] 1 Irish Rep. 455.) In such cases since the use is not charitable even in a broad sense, an intent or purpose on the part of the creator of the trust to confer an indirect benefit upon the public does not change the character of the trust. Not even if the designated use might tend to create the contemplated public benefit would the rule be different. 'There is no authority for holding a charitable tendency to be a charitable use; in other words, that a gift to a person for his own benefit, whereby consequential charity may arise, is not a charitable use.' "

As executed, the effect of the paragraph of the will to which attention hereinbefore has been directed is that the trustee therein named is permitted to disburse a portion of the income of the trust property to uses that in legal contemplation either are or may be noncharitable. Especially as applied to a noncharitable corporation, that such a provision in a will defeats its intended purpose is attested by so many authorities that to cite them would amount to a superfluity. However, as to general governing principles, see the cases hereinbefore cited; also *Estate of Dol,* 182 Cal. 159 [187 Pac. 428], which relates particularly to an attempt to create a charitable trust in favor of a noncharitable corporation.

From the foregoing it may be deduced that, in the opinion of this court, no legal trust was created.

■ With respect to the appeal from the order or decree by which it was ruled that, in accord with the provisions of the will, because the petitioners had instituted the proceedings by which they sought to have the court place its construction upon the provisions of the will to which consideration hereinbefore has been given, the petitioners had forfeited their respective legacies therein provided and were entitled to receive the sum of one dollar and no more,—in principle the question therein presented seems to be settled

by the decision rendered by the Supreme Court of this state in the case entitled *In re Walkerly,* 108 Cal. 627 [41 Pac. 772, 49 Am. St. Rep. 97], wherein it was held (syllabus) :

"While the election of the widow to take under the will estops her from denying the validity of the instrument as a will, it cannot estop her from insisting upon *a proper interpretation of the instrument, nor from questioning the validity of trusts attempted to be created thereby.*"

A similar thought is expressed in *Estate of Vanderhurst,* 171 Cal. 553, 568 [154 Pac. 5, 8], where it is said:

"There was a provision in the will that in case any legatee or devisee contested it, his or her share of the estate should be one dollar. Appellants argue that the respondents . . . contested the will. The mere statement of this contention refutes it. They opposed the petition for distribution, but they did not seek in any way to contest the will. *They merely sought interpretation of it.*"

In *Estate of Bergland,* 180 Cal. 629 [182 Pac. 277, 5 A. L. R. 1363], it was held that (syllabus) :

"An attempt in good faith to probate a later purported will, spurious in fact, but believed to be genuine by the party seeking its probate, does not fall within the forfeiture clause of the genuine will." And that ruling was quoted with approval in *Lobb* v. *Brown,* 208 Cal. 476, 484 [281 Pac. 1010], where the general subject of forfeitures of legacies and devises is considered by the court.

In *Black* v. *Herring,* 79 Md. 146 [28 Atl. 1063, 1065], where a situation like that here involved was under consideration, it was said: "It is a mistake to assume that the appellant, in filing this bill, *by which he seeks only the true construction of said will and codicil thereto, and the enforcement of his rights thereunder,* is seeking to thwart the designs of the testatrix, or in any manner to interfere with the due execution of her wishes as expressed in her testamentary papers. It would be an anomaly in the law, and a very unjust restriction, if such a contention could be upheld."

But perhaps one of the clearest expressions of opinion concerning the legal effect of a forfeiture clause in a will where it appears that a judicial inquiry has been instituted by a legatee regarding the construction of the will in general, may be found in the case of *Tate* v. *Camp,* 147 Tenn. 137

[245 S. W. 839, 844, 26 A. L. R. 755], where, among other things, it is said:

" . . . *If the action of a legatee is merely one to determine the true construction of the will, or of any of its parts,* the action could not be held to breach the ordinary forfeiture clause, if the object of the action is not to make void the will, or any of its parts, *but to ascertain its true meaning.*" See, also, Schouler on Wills, sec. 605.

Considering the facts herein, this court is in accord with the law as indicated in the foregoing authorities. It follows that each of the several orders, decrees or judgments from which the instant appeals are taken should be reversed. It is so ordered.

Conrey, P. J., and York, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 12, 1934.

Preston, J., dissented.