The bill in this case is exhibited by the executor of the last will and testament of Dr. Henry Ost and prays construction thereof in certain respects. The will in question is a holographic one executed by the testator on August 29th, 1928. The testator died on October 16th, 1933, and his will was admitted to probate by the surrogate of Essex county on October 27th, 1933, and letters testamentary thereon issued to Federal Trust Company of Newark, the executor therein named and the complainant herein.
The testator died seized in fee of real estate and possessed of personal property, the latter being more than ample to pay all of his debts and funeral expenses (directed by article I of the will to be paid) and to satisfy the general legacies given by the will (articles II, III and IV).
By article V of the will authority is given to the "executors hereinafter named" to sell all of the testator's real estate either publicly or privately and at such times and upon such terms and conditions as "they" shall deem proper and to execute and deliver instruments of conveyance therefor.
The will names but one executor. By article VI the testator appointed as "sole executors" thereof the Federal Trust Company of Newark, New Jersey, the complainant. Obviously *Page 45 
the testator used the plural "executors" in the fifth and sixth articles of the will and elsewhere therein and the plural pronoun "they" in the fifth article as referring to the corporate executor.
I am now brought to a consideration of those portions of the will which are involved in the present inquiry and which have been presented for construction. The better to understand those matters it will be helpful to indicate what heirs-at-law and next of kin of the testator survived him.
The testator's wife, Marie A. Ost, whom he married on August 16th, 1928, survived him. She is one of the defendants in this suit and by her answer has made certain claims of construction which will be hereinafter dealt with.
The testator also left him surviving twelve nephews and nieces and fifteen grandnephews and grandnieces, the latter class being children of surviving nephews and nieces. Those beneficiaries are as follows:
 Children
 Nephew or Niece (Grandnephew or Grandniece)
Lillian C. Ast Viola Ast
 | Elizabeth H. Ahrens
Arthur H.M. Ahrens 
 | Jean A. Ahrens
Cecelia Gillin
 | Charles Ost, Jr.
Charles Ost Louis Ost
 | Henry Ost
 | Rose Catherine Kerr
Catherine A. Kerr 
 | John Dawson Kerr
Lulu (Keegan) R. Brown
 | Blossom R. Ost
Louis Ost, Jr. 
 | Lois R. Ost
Frederick Ost Mildred M. Ost
Henry J. Ost Phyllis Ost
Charles L. Ost Ella Ost
Lillian R. Falstrum Ruth G. Falstrum
Gertrude Morlet Janet G. Morlet

The four articles of the will principally involved in the present investigation are the seventh, eighth, ninth and tenth articles. It is necessary to state them here. They read as follows: *Page 46 
"VII. After making bequests as cited on page one of this will I direct that the balance of my estate be Held in trust by the Federal Trust Co. of Newark, N.J., as executors and the proceeds thereof be divided as follows:
To my wife Marie A. Ost .................................... 33%
To my sister Elizabeth Ahrens .............................. 5%
To my brother Louis Ost, Sr. ............................... 10%
To each niece nephew namely
Lillie Ast children of Elizabeth |
Arthur Ahrens Ahrens my sister |
 |
Celia Gillen |
Charles Ost children of Louis Ost, Sr., |
Kate Kerr my brother |
Lulu Keegan each 2%
Louis Ost, Jr. |
 |
Henry Ost children of Wm. Ost, my |
Charles Ost brother deceased |
 |
Lilian Falstrum children of Chas. Ost, my |
Gertrude Morlet brother deceased |
To each child of my nieces nephews ................... each 1%

"VIII. I direct that these payments be made monthly and as prompt as possible especially the bequest to my wife my brother Louis.
"IX. Should any of my beneficiaries herein mentioned die or become deceased I direct that his or her share there then become part of my residual estate and payments to them be stopped at once.
"X. I order direct that when the youngest Living child of my nieces nephews is 21 years old (that is the youngest of all those children is 21 years old) That then the estate be divided among those of the beneficiaries then living in the proportions as stated in article Seven."
Louis Ost, Sr., the brother to whom the testator by the seventh article gave a ten per cent. share, predeceased the testator, that beneficiary dying on July 7th, 1933. The testator's sister, Ella Ost, who had been an inmate of the Home for Incurables of Newark, New Jersey, and to which institution the testator by the second article of the will bequeathed $1,000 for said inmate, predeceased the testator, dying November 1st, 1928. The testator's sister, Elizabeth Ahrens, to whom by the seventh article he gave a five per cent. share, survived the testator and has in this cause contended for the same construction as is sought by all the nephews and nieces, excepting the nephew Frederick Ost. *Page 47 
It is of primary importance to determine what persons are entitled under the terms of the will to share in distribution of income and corpus and to what extent the will operates to dispose of the real and personal property whereof the testator died seized and possessed. By the seventh article no gift of principal or corpus is accomplished. All that that article disposes of is the income yielded by so much of the testator's estate as remains in the hands of the executor and held by it after the payment of the legacies given by the earlier provisions of the will. While it is true that the seventh article does not speak of the division of "income," it does provide for the division of "proceeds." According to certain percentages, and by the eighth article it is provided that those divisions in the form of payments be made monthly and as promptly as possible, especially those intended for his widow and brother. By the tenth article it is provided that upon the occurrence of a stated event, viz., the attainment of majority of the youngest living grandnephew or grandniece, the estate (I construe this to meancorpus) shall be divided "among those of the beneficiaries then living in the proportions as stated in article seven" a study of the structure of articles VII to X (both inclusive) of the will clearly demonstrates that article VII disposed only of income and that the testator used the word "proceeds" in the sense of income, and that article X disposes of corpus only, and that those entitled to share in the corpus, when the time arrives for the distribution thereof, are only such as are entitled to share in the income and as are alive when the youngest grandnephew or grandniece of the testator alive at his death reaches the age of twenty-one years.
In construing the word "proceeds" to mean "income" I not only used the word in the sense meant by the testator but also within the sanctions of the definition of the word "proceeds" found in Funk Wagnalls New Standard Dictionary (1922). The definition there given is, "the sum derived from the disposal of goods, work, or the use of capital" (italics mine). The word "proceeds" has also been defined as "that which results, proceeds, or accrues from some possession *Page 48 
or transaction." Webster's Collegiate Dictionary (3d ed.).
By force of the ninth article of the will the share of any beneficiary dying becomes "there and then" part of the residuary estate. This is a direction for the lapsing of bequests and operates alike with respect to beneficiaries predeceasing the testator as with respect to those who survive him but who die before the event occurs which marks the time for distribution ofcorpus. In this regard the will draws no distinction between beneficiaries dying before and those dying after the testator's date of death. That it also applies to surviving beneficiaries who die before the time fixed for distribution of corpus is manifest from the provision in the ninth article that upon such death payments (this means of income) to the beneficiary so dying should be stopped at once. This construction that I give to the ninth article disposes of any claim based upon the bequest of $1,000 to the Home for Incurables for Ella Ost, the testator's sister who predeceased him and of the bequest of ten per cent. of both income and corpus to Louis Ost, Sr., the testator's brother who predeceased him.
Re Claim of Frederick Ost.
When expressing his gift to his nieces and nephews the testator said "to each niece and nephew namely" and designated eleven persons by name. To each he left a two per cent. share. Immediately thereafter and in the same article the testator left one per cent. "to each child of my nieces and nephews," not designating by name any of the grandnieces or grandnephews. It now appears that he omitted to include in the enumeration of nephews and nieces the name of Frederick Ost, a nephew. It is contended that this omission is the product of oversight and error. The nephews and nieces are not described by class designation, as are grandnephews and grandnieces but are specified and described by name. It cannot be otherwise than that the testator intended that only those nephews and nieces whom he so named should share and it must be assumed that the omission of the name *Page 49 
Frederick Ost was with the intent in the mind of the testator that he should not share in the estate. There is no evidence before me to justify the finding that the omission of Frederick Ost's name was due to oversight and error but even if there were such evidence that would not justify the court rewriting the testator's will and injecting the name of another beneficiary. A contrary rule would open the door to countless claims on the part of ignored or omitted heirs or next of kin that the omission was inadvertent and should be cured by judicial intervention. Such rule would make it necessary for a testator to enumerate not only those whom he wills to be the objects of his bounty but also expressly to enumerate those whom he wishes to exclude from that bounty. There being nothing in the will indicating a testamentary intent that Frederick Ost should share, I find that he takes nothing under testator's will.
Re Claim of Mildred M. Ost.
The bill further presents the executor's inability to determine whether Mildred M. Ost, the daughter of the aforenamed Frederick Ost, is included in the persons or class described by the testator as "each child of my nieces and nephews." The question is raised because of the fact that the testator named eleven nephews and nieces and then used the language last quoted. It is suggested in argument that the quoted direction must be interpreted in the light of the immediately preceding enumeration of nephews and nieces and that Frederick Ost having been omitted from the enumeration his daughter, Mildred, is consequently not included in the children of nephews and nieces who are to share. Not so. Had the testator intended that only the children of the enumerated nephews and nieces should share he could have expressed that intent in one of two ways, viz., (1) by adding the word "said" so that the provision would read, "to each child of my said nieces and nephews each 1%," or (2) he could have enumerated the grandnephews and grandnieces in quite the same way as he enumerated their parents. The difference in manner of describing the two classes together with *Page 50 
the all-embracive language used in describing grandnephews and grandnieces leaves no doubt but what testator intended that all of the latter class should share and that each grandnephew and grandniece should receive one per cent. whether or not the parent was provided for. Recognizing the claim of Mildred M. Ost is altogether consistent with the rejection of the claim of her father, Frederick Ost. The testator's intent is clear that he intended to include Mildred and to exclude her father. Mildred M. Ost takes under the will the same share as do the other fourteen grandnephews and grandnieces.
Vesting of Legal Title to Real Estate.
Several of the beneficiaries assert that title to the real estate is vested in the heirs-at-law; the majority of the beneficiaries assert that title is vested in the executor, as trustee, while testator's widow alleges a conversion into personalty. I see no difficulty on this point. The seventh article of the will directs that the balance of the estate be held in trust by the executor. The "balance" of the estate includes all of the real estate, since it is admitted on all sides that the personalty is more than ample to pay debts and legacies. The uses upon which the legal title is held in trust are well defined in the seventh and tenth articles. The duties of the trustee are active ones. It is not only to hold the trust property but also to make distribution of income. This necessarily involves the management of real estate, the collection of rents and the distribution amongst the beneficiaries of the net rental yield. In addition to these active powers and duties there is also by implication present the power to convert by sale the realty into money and to invest in legal investments. The power in the executor to sell at any time in its discretion is conferred by the fifth article of the will. The proceeds of such sale become part of the corpus to be held and invested and the income distributed and the corpus
ultimately divided as directed in another portion of the will. A devise to the executor upon such active trusts necessarily is a devise of the legal title. The entire scheme of the will, the present *Page 51 
distribution of income and the postponement of the distribution of corpus until the occurrence of a stated event, clearly indicate and accomplish a present vesting of the legal title in the trustee, there remaining in the beneficiaries only the equitable use or interest. I deem it unnecessary to cite authorities that express words vesting the fee need not appear in the will. It is enough if the intention to confer the fee can be gathered from the will or that such result is reasonably necessary to make effective the powers expressly conferred upon the trustee. It may also here be observed that whatever be the law with respect to a naked power of sale in the executor, the latter is not the situation here. The power of sale granted by the will here is an instrumentality for the better performance of the active trusts and duties imposed by the will upon the trustee. I conclude that the legal title to the real estate is vested under the will in complainant, as executor, upon the trusts expressed in the will.
Dower of Testator's Widow.
The court is asked to determine whether or not under the will the testator's widow is entitled to dower in the real estate, in addition to the provisions made for her by the will. It will be noted that the will is silent concerning its provisions for the widow being in lieu of dower. I do not regard section 16 of our Dower act as pertinent, for by that act dower is under certain conditions barred by the husband's devise to his wife of lands or real estate for life or otherwise. That is not the situation here. The will contains no devise to the wife of any interest in real estate. The provisions for the wife create a beneficial use in a trust fund, which fund consists of realty and personalty devised and bequeathed to the executor who holds as trustee. The answer must be sought in the rule of law that whether a legacy or bequest made by the testator to his wife or for her benefit is in lieu of dower depends upon the intention of the testator and is to be determined by a reading of the entire will and that if her claim of dower in the testator's real estate is inconsistent with the provisions made for her, then she is not entitled to *Page 52 
enjoy both those provisions and dower. Caravatta v. O'Brien,98 N.J. Eq. 199. In the cited case Vice-Chancellor Berry held, as was held in earlier cases referred to by him, that in ascertaining the testator's intention as to whether or not dower was intended to be excluded, it is of primary importance to determine whether the allowance of dower will "disturb" or be "inconsistent" with any of the provisions of the will. It has been held that "express words of exclusion are not necessary in a will, in order to bar dower." Stark v. Hunton, 1 N.J. Eq. 216,224. As was said by Vice-Chancellor Stevenson in Moore v.Moore, 84 N.J. Eq. 39 (quoted by Vice-Chancellor Berry in theCaravatta Case, ubi supra): "The trend of our New Jersey decisions, as indicated in our law and equity reports, has constantly been toward the establishment of a natural and common sense method of determining this question whether a testator has intended that what he gives his widow in his will is to be in addition to her dower or in lieu of her dower." It was said inGriggs v. Veghte, 47 N.J. Eq. 179: "This is only to be settled by ascertaining what was the intention of the testator in making the provision he has for her, with reference to its being in lieu of or in addition to her dower. If he intended it in lieu thereof, she must choose between the two. If a testator declares in express words one way or the other, such declaration is conclusive. But, in the absence of express words, how is the intention to be ascertained?" And (at p. 184), "in this state it seems settled, that when, from the whole will and the circumstances of the estate, it is manifest that the testator, in making provision therein for his widow, intended that the same was to be in lieu of dower, it is sufficient to put her to her election between the provision made for her in the will and that made for her by law." (Citing cases.) And (at p. 186), "while the fact that what he gives her is greater than would be her dower in his real estate is not conclusive, it is entitled to weight, in ascertaining from the will, what was the intention of the testator in giving her such a share of his estate, with reference to its being in lieu of dower." *Page 53 
It was also held in the Caravatta Case, ubi supra, that a full power of sale of lands in the executors, conferred by the will, is inconsistent with an intention on the part of the testator that his widow take both legacies and dower. Applying the foregoing principles to the case at bar it is very clear to me that the provision giving the widow a thirty-three and one-third per cent. share in the trust fund to be held by the executor was intended to be in lieu of her dower in real estate and not additional thereto. Here the personal property constitutes a considerable portion of the gross estate left by the decedent. By the provisions of the will the widow was given not only one-third of the income of both realty and personalty until the time for distribution of corpus arrives but at that time becomes entitled absolutely to one-third of the entirecorpus, representing realty and personalty. While it is true that her death occurring before the time for ultimate distribution arrives causes, under the terms of the will in question, her right in corpus to lapse, it is also true that her dower interest at law would similarly terminate upon her death. At law she would have one-half of the net rents of the real estate during her life only; under the will she gets one-third of the yield of both realty and personalty with a reasonable prospect of getting that third absolutely if she lives until the youngest grandnephew or grandniece reaches the age of twenty-one. That event can occur no later than about fourteen years hence, since the youngest beneficiary is Jean A. Ahrens, now about seven years of age. The widow is at the present time about fifty-nine years of age. It is apparent that the provisions of the will are substantially more liberal in favor of the widow than the provisions of law giving her dower. The election, however, is hers. I am not informed by the evidence of any conduct on her part which indicates any election. The provisions of the will for her benefit it is held, are in lieu of dower, that she cannot have both and that if she has elected or hereafter elects to take under the will, such election will bar her dower at law.
That the widow may not have both dower and the benefit of the will seems conceded by her. In one of the briefs filed by *Page 54 
counsel in her behalf appears the following statement: "If the trusts are valid and the real estate is a part thereof, we agree that no dower right exists in the widow." I have not rested my determination upon that admission. I am inclined to think that in litigation calling for the court's interpretation of a will the admissions of any of the parties on a point of law, even though those admissions be against self-interest, are not controlling. The duty to reach a correct construction is the court's sole responsibility.
Extent of Estate Disposed of by Will.
As has already been shown, the beneficiaries named in the will who survived the testator were twenty-eight in number, viz., his widow, his sister, eleven nephews and nieces and fifteen grandnephews and grandnieces. As will be shown later when dealing with the question whether the gifts of income provided for in the seventh article and the gifts of corpus provided for in the tenth article are void for offending the rule against perpetuities, I hold that the said twenty-eight beneficiaries are the only persons who can possibly take under the will and that no grandniece or grandnephew born after the testator's death is within any of the provisions of the will. Those twenty-eight beneficiaries represent the maximum number of persons who are entitled to take under the will both income and corpus. Their number may not be increased by any provision appearing in the will or by any event occurring after testator's demise. They may be reduced in number only and that by the occurrence of the events of death contemplated by the ninth article of the will.
To those twenty-eight beneficiaries the testator expressly gave seventy-five per cent. of his entire estate remaining after the payment of debts and general legacies. Another ten per cent. had been given to the brother, Louis Ost, Sr. But, as already appears, that beneficiary predeceased the testator and the legacy lapsed by force of the ninth article of the will providing for the lapsing of the shares of beneficiaries dying before ultimate distribution of corpus. Therefore, at the time of death, the will made gifts of only seventy-five per cent. *Page 55 
of income and corpus, although it must not be overlooked that the testator intended to vest and by his will did vest in the executor the legal title to his entire estate. It is manifest, however, that the testator failed to dispose of the beneficial use of his estate in excess of the seventy-five per cent. given to the twenty-eight designated beneficiaries. Whether this omission was due to inadvertence on the part of this testator who undertook to write his own will or to mere arithmetical miscalculation or, on the contrary, was due to some undisclosed purpose or design, is beyond my power to discern or determine. I am not unmindful of the rule that it is presumed that the testator did not intend to die intestate with respect to any part of his estate. That rule, however, should not and does not prevail against the result of intestacy or partial intestacy when that result is fairly inescapable. Recognition of that rule of presumption does not justify revision of the clear language of a will. It would be intolerable for courts to furnish both the donation and the donee where the testator himself omitted to do so. It is conceivable that when writing his will Dr. Ost either did not add up the stated percentages and assumed that they totaled one hundred, or adding them up erroneously reached the total of one hundred, or he may have been in error concerning the number of his grandnephews and grandnieces, not described by name as in the case of his more immediate kin, his nephews and nieces. Any one of these hypotheses can account for the variance between the eighty-five per cent. achieved by the testator's language and the one hundred per cent. constituting the whole of his estate. Adding to that difference of fifteen per cent. the lapsed ten per cent. gift to the brother, Louis, it is inescapable that the testator did not dispose of the beneficial use of twenty-five per cent. of his estate, with respect to which twenty-five per cent. it must be held that he died intestate. It is urged, however, that the word "per cent." (the mark % appears) used by the testator should be interpreted to mean "parts" so that the widow's share should be taken to mean thirty-three equal parts or thirty-three seventy-fifths and all the other gifts, expressed in the will in percentages, *Page 56 
to be construed similarly. It is argued that by the employment of this formula intestacy would be avoided and as beneficiaries died before ultimate distribution the parts of the survivors would correspondingly increase. It is suggested that if the brother, Louis Ost, Sr., had not predeceased the testator the common denominator would have been eighty-five and the share of each beneficiary would be the percentage stated in the will over that denominator. Due to his death the denominator, it is claimed, stands changed to the figure seventy-five. This, it must be admitted, is quite an ingenious and convenient solution of the difficulty but it is not a sound one, for it does not represent the expressed intent of the testator. Counsel for the sister, Elizabeth Ahrens, and twenty-five other beneficiaries under the will is quite aware of the weakness in the claim that the word "percentage" should be interpreted to mean "parts," for he says in his brief: "The result is, we think, not entirely what the testator intended. He meant to divide all of the income and all of the corpus. His detailed directions about the income literally show division of only eighty-five per cent. * * *." He argues, however, that the interpretation contended for can easily be given because when disposing of corpus by the tenth article of the will the testator did not use the word "per cent." but directed that the estate be divided among the designated beneficiaries "in the proportions as stated in article seven." Counsel seeks to make the % mark appearing in the seventh article synonymous with the word "proportions" appearing in the tenth article and then to have the two synonyms construed to mean "parts." The word "proportions" is entirely consistent with the word "per cent.," construed as an aliquot part of one hundred as the whole. Every per cent. is a proportionate part or "proportion" of the whole of one hundred per cent. The word "per cent." has been defined as follows: "(Latin. Per centum.) By the hundred; in the hundred — used of proportions, rates of interest, etc. Sign, %." Webster's Collegiate Dictionary (3d ed.).
Counsel for the widow in contending that the word "per cent." should be considered by me as meaning "parts" refers *Page 57 
to two cases. He mentions Aitken v. Sharp, 93 N.J. Eq. 336.
There a beneficiary entitled to three forty-eighths died in the lifetime of the testatrix and the question was whether the other beneficiaries should take forty-five forty-eighths or forty-five forty-fifths. It was held that the testatrix did not die intestate with respect to the three forty-eighths and this for the reason that the testatrix expressly provided that the residuary estate should include lapsed legacies. Her intention was carried out by throwing the lapsed legacy into the residuary estate and reducing the denominator of participation from forty-eight to forty-five. In the will before me I am dealing with twenty-five per cent. of the testator's estate, fifteen per cent. of which could not be involved in the lapsing of any legacies for that fifteen per cent. was not attempted to be disposed of. The other ten per cent. given to the brother, Louis, does present the feature of a lapsed legacy but that ten per cent. is part of the trust fund in which the surviving beneficiaries share according to the percentages stated in the will. Nor is there a residuary estate disposed of by the will. Nor are there residuary legatees. It is true the testator in the ninth article speaks of his "residual estate" but nowhere makes any disposition of it in whole, and the court cannot make it for him. McDonald v. Clermont, 107 N.J. Eq. 585. The only disposition that appears in the will are the percentages stated in the seventh article. I cannot, therefore, regard the cited case as being in point. Counsel also referred to the case ofBlakeslee v. Mansfield, 66 Ill. App. 116. That does appear to be in point. But I cannot agree with its reasoning. The testator had disposed of fifty-six per cent. of his estate and said nothing about forty-four per cent. The court seemed persuaded by the fact that although quarterly payments of surplus income were provided for, nothing appeared in the will directing or intimating the disposition or management of the forty-four per cent. surplus. It seems to have been assumed by the court that because the forty-four per cent. was not mentioned it was intended to go to those to whom the fifty-six per cent. was specifically given. I must decline to follow and adopt such construction. *Page 58 
It seems very clear to me that the word "proportions" as used by the testator when disposing of his corpus means precisely the percentages enumerated in the seventh article which disposes of income. It is an unfortunate result that partial intestacy should follow but the court is powerless to change that result. It should not, in the guise of interpretation, rewrite the testator's will. It is, therefore, held that the testator died intestate with respect to twenty-five per cent. of the property remaining after the payment of debts, funeral expenses and general legacies.
This result is not changed any by the circumstance that the entire estate passed to the executor. Intestacy nonetheless follows because of failure on the part of the testator to disposebeneficially of twenty-five per cent. That point was involved in the case of White v. Crossman, 64 Atl. Rep. 168. There, there were several legacies and the residue of the property was given to the executors in trust for the "execution of my will" with a power of sale in the executor. The will made no disposition beneficially of the residue of the estate. The executor contended that as a consequence the property belonged to him. Speaking of that claim Vice-Chancellor Bergen said: "My interpretation of the will does not reach that result. I think the law is well settled that when there is a trust, and the property given upon an express trust to be carried out, the trustee is expected, after executing the trusts expressed, to make disposition of the residue as the law requires in case of intestacy, and that in this case, as to all of her estate except the legacies I have named, the testatrix died intestate, and under the law of this state her heirs would take."
It is therefore determined that twenty-five per cent. of the estate remaining after the payment of funeral expenses, debts and general legacies belong to the heirs-at-law and next of kin, determinable between those two classes in the same proportion as obtains between the realty and personalty constituting the trust fund in the hands of the executor. The executor will be directed to turn over the intestate's property to those entitled under the law thereto. *Page 59 
The evidence taken before me established that as of the date of the testator's death the personalty left by him was worth approximately $125,000 and the realty approximately $67,000. The debts amounted to approximately $2,000 and the general legacies to $12,100. These last two items amount to $14,100 and are chargeable against the personal property. It does not appear in the record what the funeral expenses amounted to. If the parties regard this of any consequence proof may be offered on the point. It will therefore be considered that the testator's estate, after payment of debts and legacies, consisted of $111,000 personalty and $67,000 realty, making a total of $178,000, of which the personalty represented sixty-two and four-tenths per cent. and the realty thirty-seven and six-tenths per cent. The twenty-five per cent., constituting the intestate's property, amounts to $44,500. The executor will be instructed to turn over at the appropriate time to such personal representative of the decedent as may be appointed sixty-two and four-tenths per cent. of that sum and to decedent's heirs-at-law thirty-seven and six-tenths per cent. thereof. It may be that the condition of the estate in the hands of the executor is such that compliance with such direction at this time may be harmful to the trust. I will hear counsel on this question. It may also be that the figures that I have used in the calculation are subject to revision. They were not discussed by counsel in the oral or written arguments. It may well be that further appraisal of the estate as of the time of testator's death should be had. On these questions, too, the parties will be heard. A reference to determine the exact figures will be made.
Having already reached the result that the provisions of the will in favor of the widow are in lieu of her dower, it need only be added that by her taking under the will she will be disentitled to dower in that portion of the intestate estate representing real estate.
Validity of Articles VII and X.
In behalf of the widow it is contended that the bequests of income (article VII) and the bequests of corpus *Page 60 
(article X) are void as offending the rule against perpetuities. It is claimed that the gift "to each child of my nieces and nephews each 1%" is a gift in favor of such grandnephews and grandnieces as may be alive at the time fixed by the tenth article for ultimate distribution. By the latter article ultimate distribution is to take place when the youngest grandnephew or grandniece reaches the age of twenty-one. It is contended that by the words last quoted the testator intended to include grandnephews and grandnieces born after his death and before ultimate distribution and that, therefore, distribution ispossibly postponed until a time beyond a life or lives in being and twenty-one years. If such postponement were the fact the gifts would be invalid and with respect to them the testator would be deemed to have died intestate. Even so, that would in the instant case not apply to the gifts of income (article VII) for those gifts are effective presently and await the happening of no future event. If there were any validity in the contention it would be only with respect to the disposition of corpus. But there, too, the argument fails for several reasons.
There is nothing in the will militating against applying the general rule that the will speaks as of the date of death. Article VII gives one per cent. of the income to each grandnephew and grandniece and article VIII directs that those payments be made monthly and as promptly as possible. Nowhere in the will is there the slightest intimation that grandnephews or grandnieces born after the testator's death were to be added to his list of beneficiaries. This omission is very significant in the light of the fact that by the ninth article the testator did make provision for beneficiaries dying before ultimate distribution. Having provided for the contingency of future deaths and having omitted all reference to future births, the inference is clear that future births were not within testator's contemplation and that he intended to make the objects of his bounty those beneficiaries living at the time of his death. His grandnieces and grandnephews do take as a "class" under the will. Each takes his individual and separate one per cent. The death of any of the grandnephews *Page 61 
and grandnieces does not pass the share of the one dying to the survivors of that class. It must be considered that when the testator gave the one per cent. income "to each child of my nieces and nephews" it was no different than if he designated each by name. It was unnecessary that he do so. In either case only those who meet the description, viz., child of a niece or nephew, and alive at the testator's death, take the gift. Confirmation of this view is found in the eighth article. That article gives the corpus to the same beneficiaries who are designated to take the income. The testator intended that thecorpus should pass only when the youngest of the grandnephews and grandnieces entitled to income under article VII should reach the age of twenty-one years. It will be observed that he caretted in or interpolated the word "living" after the word "youngest" and before the word "child." This was a deliberate act on the part of the testator. The word "living," so interjected, could not have been intended to refer to the fact of life of the grandnephew or grandniece reaching the age of twenty-one years. The attainment of that age necessarily involves in itself the fact of living at that time. There could have been only one rational purpose in the interjection of the word "living" where it appears in the context, viz., to identify that person whose attainment of majority would mark the arrival of the time for distribution of corpus. It is only reasonable to believe that the testator intended to fix some ultimate and definite time when the corpus would be paid over, the trust terminated and the estate wound up. It is not reasonable to believe that he intended to measure that event by the attainment of majority of a person not yet alive at the time of his death. I reach the conclusion that the word "living," so used, means living at the time of the testator's death. Then again, in article X, appears the parenthetical phrase "that is the youngest of all those
children is 21 years old." (Italics mine.) The word "those" carries with it the sense of further emphasis and definition and has reference to those "children" (grandnephews and grandnieces) mentioned in article VII who take income from and after the date of the testator's *Page 62 
death. I hold that there is no gift in the will to grandnephews and grandnieces who might be born after the testator's death but only to those living at the time of his death. It follows that there is no postponement of ultimate distribution beyond the period of time allowed by law. This makes it unnecessary to determine the point urged that all gifts of corpus are contingent on the taker being alive when the time for distribution arrives. Even if such gifts were contingent in the sense contended for the contingency is such that it mustabsolutely occur within the period sanctioned by law and therefore does not present any possible violation of the rule against perpetuities.
It need only be added that the rule against perpetuities is designed to forbid the vesting of estates and interests beyond designated periods, in this state life or lives in being and twenty-one years plus an additional nine months in certain instances. Where the gift vests at once (which I hold is the case here), the rule has no application. The bequests to all the beneficiaries vested at the date of death, although the bequest itself (the corpus) is not to be delivered until a future date, the income in the interim to be paid to the donee. In such a situation the whole gift is deemed vested at once. As was said by our court of errors and appeals in Gifford, Adm'r, v. Thorn,9 N.J. Eq. 702, 708: "Where the interest of the legacy is directed to be paid to the legatee until he receive the principal, or where the legacy is placed in the hands of trustees for the exclusive benefit of the legatee until it is directed to be paid over, the legacy will be deemed vested. Stapleton v. Cheales,Prec. in Chan. 317; Lane v. Goudge, 9 Ves. 229; Hanson v.Graham, 6 Ves. 249; Hoath v. Hoath, 2 Bro. Chan. Cas. 3;Fonnereau v. Fonnereau, 3 Atk. 645; 1 Jarm. 764; 1 Roper 572."
Here, seventy-five per cent. of the estate was placed in the hands of the executor in trust to pay the entire income thereof to those beneficiaries who ultimately are to take the corpus of that seventy-five per cent. The situation is well within the quoted language from Gifford v. Thorn, ubi supra. However, I rest my conclusion upon the interpretation that I have *Page 63 
given to the language of the will by which the intended grandnephews and grandnieces are only those alive upon the testator's death.
Existence and Duration of the Trust.
The existence of a trust under the will is questioned by the widow, in whose behalf it is strenuously argued that the trust set up by the testator fails by reason of its term being, both with respect to income and corpus, violative of the rule against remoteness. As already shown, the rule against remoteness in the vesting of interests is not violated and, therefore, it follows and is held that the trust in its entirety is a valid one. The trustee, however, wishes to have determined the duration of the trust. The majority of the beneficiaries suggest that the term of the trust is measured by the attainment of majority of the youngest grandnephew or grandniece living at testator's death. The possibility of the term extending during the minority of children hereafter born to nieces and nephews is raised by the query in the bill.
My view is in agreement with that of the majority of the beneficiaries. As I construe the will the trust endures until the youngest grandnephew or grandniece living at the date of the testator's death reaches the age of twenty-one years. Of course, if that youngest person should die before reaching the age of twenty-one, ultimate distribution will be accelerated by the attainment of majority of the grandnephew or grandniece next in age and living at the testator's death, and so on.
Forfeiture Clause in Will (Article XIII).
Article XIII of the will contains the following provision:
"* * * should any of the beneficiaries under this, my will, object to the probation thereof, or in anywise, directly or indirectly contest, or aid in contesting the same, or any provisions thereof, or the distribution thereunder then, in that event, I annul any bequest made to such beneficiary, it is my will that such beneficiary shall be absolutely barred cut off from any share in my estate."
The executor asks whether the pleadings and arguments in this cause of any of the parties constitute a "contest" of *Page 64 
the will within the meaning of the quoted testamentary provision. There was at no time any effort on the part of any beneficiary to prevent the probate of the will, nor does there appear to have been any suit or proceeding instituted by any beneficiary having for its purpose the setting aside of the will or any portion thereof as in Cross v. French, 118 N.J. Eq. 85; affirmed,119 N.J. Eq. 563. The only litigation affecting the will is the instant matter, brought by the executor for the construction of the will. In this cause all the beneficiaries are present ininvitum. The widow, who by her answer and argument challenged the validity of the trust, stated in that answer that she "joins in the prayer of the complainant for a construction of the entire will of the said Henry Ost, not intending herein or hereby to contest the same or any of its provisions or distribution thereunder." In his brief her counsel, after repeating the foregoing statement of the answer, said: "The purpose of this defendant's answer and this memorandum is to assist the court in determining the legal construction, effect and interpretation of the will, its provisions and distribution thereunder, not to contest the same." Notwithstanding such disclaimer by the widow she comes perilously near contesting the will "or any provisions thereof, or the distribution thereunder." If this were a suit brought by the widow for the purpose of having the will so construed as to render invalid the trusts therein constructed, I should have little hesitancy in holding that she had by such conduct offended against the prohibition of the will and had forfeited her right to take under it. The controlling circumstance, it seems to me, is the fact that the questions are presented by the executor who draws the beneficiaries into the argument. It would be grossly unfair in such circumstances to visit upon the beneficiary expressing himself the penalty of forfeiting his share of the estate. The beneficiary need not stand mute and the law will not by threat of forfeiture compel his silence when questions are propounded by another touching the right and interest of the beneficiary under the will. A contrary rule would make the suit for the construction of the will a unilateral proceeding, *Page 65 
and the presence in such cause of the beneficiaries as defendants could well be dispensed with. It seems to me that when the language of a will is under investigation and the testator's intention is being inquired into a beneficiary may freely speak, when brought into the cause, without incurring the penalties provided in the will against a contesting beneficiary, even though while so speaking the beneficiary contends for a construction which will by operation of law render provisions of the will invalid. The court is obliged to construe the will in accordance with legal principles. Those only who have an interest in the will have the disposition to assist the court in its labors. If they must be silent, for fear of forfeiture of benefits given them by the will, the court will be hindered by the command of the testator in reaching a correct result. For assisting the court in furnishing facts and presenting arguments the beneficiary should not be penalized, where that service comes not from a volunteer but from an invitee. It was said by the supreme court of Connecticut in South Norwalk Trust Co. v. St.John, 101 Atl. Rep. 961, that: "One of the claimed exceptions to the general rule of forfeiture is not an exception. If the action of a legatee is merely one to determine the true construction of the will, or of any of its parts, the action could not be held to breach the ordinary forfeiture clause, for the object of the action is not to make void the will, or any of its parts, but to ascertain its true legal meaning. Black v. Herring,79 Md. 152; 28 Atl. Rep. 1063; Schoul. Wills (5th ed.) § 605. The appeal taken from the decree of the probate court did not, as we have before pointed out, raise the question of the construction of this will."
In the Connecticut case above cited the bill for construction was filed by the executor and trustee but it appeared that theretofore certain of the beneficiaries had appealed from the order admitting the will to probate. Pending the appeal the parties thereto stipulated that the only question to be determined was whether or not the whole or any part of a certain section of the will was void under the law against perpetuities,c. The court held that the appellants by their appeal *Page 66 from probate violated the provision of the will that any beneficiary contesting its probate or operation or seeking to set it aside or annul it should forfeit the interest given such beneficiary by the will, though the appellants attempted to conceal their purpose to contest the will by stipulating that the only question to be determined was whether a certain provision in the will was void under the law against perpetuities. While that case reaches a result different from the one that I reach, it distinctly recognizes the rule that if the litigation is merely one to construe the will or any of its parts forfeiture does not follow. In the Connecticut case it was the probate of the will itself that was sought to be undermined by a direct appeal from the decree of probate. Not so here. In the case before me the parties merely assist in determining the true meaning of the will. If, as a consequence of such determination, invalidity of a portion of the will were to result it would hardly be fair to punish the beneficiaries for the assistance they had given the court. I conclude that neither the widow nor any of the beneficiaries have by their conduct in this cause warranted the invocation and application of the penalties provided in the thirteenth article of the will.
Disposition of Income and Corpus.
The complainant as executor and trustee will be instructed to disburse presently seventy-five per cent. of the income to the beneficiaries named in the will and to distribute the corpus
when the time for ultimate distribution arrives, according to the provisions of the will hereinabove construed. Complainant will also be instructed to deal with the balance of twenty-five per cent. of both income and corpus remaining in its hands as the property of an intestate.
 A decree will be entered in accordance with these conclusions. *Page 67