The opinion of the Court was delivered by
DunkiN, Ch.
The defendant’s first ground of appeal has certainly no foundation. But it is due to the zeal and earnestness with which it was insisted upon by both the counsel of the appellant, that it should be more fully explained. It is said this is a will of specific legacies, without any residuary clause, and that the defendant, the executor, is either not accountable at all, beyond the payment of debts and legacies, or that, if so accountable, the surplus (in the language of the appeal) “ can only be reached by taking administration on the estate of Henry Parris, deceased.”
It is stated in the decree, that when the testator made his will, he had three sons and four daughters. One of his sons had since died. All the daughters, the two surviving sons, and the representatives of the deceased son, were parties, either as complainants or defendants. It is not suggested that there were any other distributees, nor is it a ground of appeal, that all the distributees are not before the Court. Then, whence the necessity, or propriety, of an administration ? By law, the title of all the testator’s personalty, whether disposed of by his will or not, is vested in the executor. It is true, that in England, the surplus, after payment of debts and legacies, was held, at law, to belong to the executor; but even there, this general rule of law was controlled in Equity, in all cases where a necessary implication or strong presumption appeared, that the testator meant only to give the office of executor, and not the beneficial interest in the residue. In all such cases, the executor has been considered a trustee for the next of kin of the testator. And now, by the statutes of 11 Geo. IY. and 1 Wm. IY., Courts of Equity are required always to consider executors as trustees for the persons who would be entitled to distribution, in respect of *470 any residue not disposed of by the will. 2 Wms. Exors. 1050. But in South-Carolina executors have been always so regarded. As executors, they have no interest beyond the commissions allowed by law, and for any surplus of their testator’s estate they are accountable as trustees, to the next of kin. In nearly every volume of our Reports, cases may be found in which this liability of the executor is familiarly recognized, such as Hintson vs. Pickett, 1 Hill Ch. 35; Broughton vs. Telfer, 3 Rich. Eq. 431, &c.; although it may be true that no direct decision upon the subject may be found, because no such question has been made.
Then it is contended that the defendant is protected by the statute of limitations, and that, particularly after January, 1844, he was only the special agent of the testator. But the testimony is very full, both from his own acts and declarations, as well as the declarations of the testator, that the defendant was his general agent. One of the demands on which he insists, is for a note which he signed, in the name of the testator, and as his agent, subsequent to January, 1844, and which he alleges was paid by the surety, Henry Cobb. It is well settled, that in such cases, the statute does not commence to run until the termination of the agency. Hopkins vs. Hopkins, 4 Strob. Eq. 207. And, even if the general agency ceased, a s contended, in January, 1844, the bar had not attached in September, 1847, when the defendant became executor.
The defendant having refused to deliver the two slaves specifically bequeathed to the complainants, (the son and granddaughter of testator,) on account of the insufficiency of the estate to pay the debts, this bill was filed, alleging, among other things, that the defendant, soon after testator’s decease, had carried off to the West and sold certain of testator’s slaves, and the bill prayed not only a. specific delivery of the slaves bequeathed, and an account of their hire, but that the defendant might account for his actings and doings as executor, and also for what he had received and disposed of during the testator’s imbecility. The answer admits the removal and sale of the *471 negroes, in 1848, for $3,050; but insists that they had become the property of the defendant by the deed of April, 1843. The infirmity of that deed has been adjudged, for the reasons stated in the decree, and which need not be repeated. And as no adverse possession of the property included therein is suggested to. have existed, until the defendant’s removal in January, 1844, the bar of the statute (if applicable under such circumstances) was not completed at the testator’s death.
It is argued that the conclusions of the Chancellor upon the facts are at variance with the verdict of the jury, in relation to the will. This is an entire misapprehension. The Chancellor was of opinion, and so stated, that the testimony did not establish incapacity to make a will, but only such condition, both of mind and body, as would render the testator peculiarly subject to be influenced, and, it might be, misled, by those in his confidence, and that the defendant stood in that relation, and, in the matter of the deed, had abused the confidence. But, under the will, the defendant took no part of the testator’s estate, and, besides, it was proved that the will was read aloud, in the presence of the attesting witnesses. Under the deed, the defendant took a large part of the testator’s estate. It was executed at the same time with the will, but it was not read to the testator, and, according to the testimony of the only attesting witness, it was represented to be a deed of the land on which he lived. Further, on the trial of the will, Mr. Choice gave the same evidence as on this occasion. In the report of the presiding Judge to the Court of Appeals, adverting to this evidence, he says he “ charged the jury that even the offer of a fee, or a bribe, to a lawyer, to induce him to persuade the testator to make a will in favor of the executor — and there was no further proof that such base intention was carried out— was not, of itself, conclusive evidence of either fraud or undue influence.” But what would have been the ruling of that pure and enlightened magistrate, if such unworthy intention had been too successfully carried into effect 1 or if a party, who was proved to have unsuccessfully tampered with the integrity of *472 one of those who should be ministers at the altar of justice, had afterwards sought to defend his pretensions under an instrument of precisely the same character as that which he had attempted to procure 1 As already intimated, it does not appear that, at the trial of the will, the parties knew anything about the existence of this deed. It had not been read in the hearing of the by-standers. It was never put on record ; and, for all that appeared on that trial, the defendant had very little personal interest in the transactions that took place at the bedside of Henry Parris, on the 28th April, 1843. Subsequent developments have given more marked significancy to his conduct. It may be that witnesses are mistaken — or worse. It may be that appearances are delusive. But Courts of Justice are bound to form conclusions from the evidence before them. They must deal with the materials presented to them, and are not permitted to indulge in speculations. According to the evidence submitted, and the approved principles of this Court, as applicable to'the relations of these parties, the. judgment of the Circuit Court should be sustained. It is so ordered and decreed, and the appeal dismissed.
JohnstoN, DargaN and Wardlaw, CC., concurred.

Decree affirmed.