The opinion of this court construing the will of Doctor Henry Ost appears in 120 N.J. Eq. 43. The decree has not yet been entered. Counsel now apply to the court and seek further construction with respect to three of the questions *Page 476 
dealt with in the court's opinion. Those questions will be disposed of in the order in which they appear in the notice of motion for reconsideration.
 I.
I said in my opinion (page 59 of the report) that: "The executor will be instructed to turn over at the appropriate time to such personal representative of the decedent as may be appointed sixty-two and four-tenths per cent. of that sum and to decedent's heirs-at-law thirty-seven and six-tenths per cent. thereof. It may be that the condition of the estate in the hands of the executor is such that compliance with such direction at this time may be harmful to the trust. I will hear counsel on this question."
The quoted matter relates to the property of which the decedent died intestate. It is now suggested for the first time that the executor (complainant) should be permitted to administer the intestate's property as constructive trustee for, and should turn over that property to, those entitled to take the same as statutory distributees, and it is urged that the appointment of an administrator or other personal representative is, by reason of the existence of a qualified executor, unnecessary.
I accede to the suggestion. The rule is stated in 23 C.J. 996,note 12 (b), as follows:
"Right of Executor to Administer Estates Undisposed of byWill — In cases of partial intestacy, or where provisions of a will have become inoperative, the executor is entitled to administer and distribute the property undisposed of, and it is not necessary or even proper to appoint an administrator for that purpose." Citing McGreevy v. McGrath, 152 Mass. 24;25 N.E. Rep. 29; In re Haughian, 37 Misc. 457; 75 N.Y.S. 932; Parris v.Cobb, 26 S.C. Eq. 450.
There will, therefore, be a direction that complainant-executor hold and administer, as constructive trustee, the property with respect to which the decedent died intestate and turn over the same to the person or persons entitled thereto under our statute of distribution. *Page 477 
 II.
The court in its opinion (page 59 of the report) expressed the view that the testator's debts amounting to approximately $2,000, and the general legacies amounting to $12,100, are chargeable against the personal property and should be deducted therefrom before determining the residue, with respect to which residue would be calculated the portion of the estate of which the decedent died intestate. Here, too, for the first time it is now argued that "any intestacy is an intestacy of a percentage of the residue, and that, in calculating the residue, there should be deducted from the gross estate, not only all funeral expenses, debts and general legacies, but also all administration expenses, including executors' commissions, legal fees and estate taxes." (Italics mine).
In my determination that the debts and legacies are chargeable against the personalty I gave full effect to the elementary rule that the personal estate is the primary fund from which debts and legacies are to be paid, except in those instances where either from the will or from attendant facts it clearly appears that the testator entertained a contrary purpose and intended those items to be paid out of some other fund. The rule has been stated even more strongly, namely, that in the absence of statutory direction or of a contrary intention appearing from the language of the will or some surrounding circumstances, the personal estate is not only the primary fund for the payment of such items but isthe only fund. I took into consideration the fact that the testator's personal property exceeded very substantially his real estate and that nowhere in the will does there appear anything from which can be spelled out an intent to charge the debts and legacies on real estate. As against these circumstances may be considered the fact that after directing the payment of debts and funeral expenses and giving the general legacies the testator disposed of the residue by saying (in the seventh article): *Page 478 
"After making bequests as cited on page One of this will I direct that the balance of my estate be Held in trust by the Federal Trust Co. of Newark N.J. as executors and the proceeds thereof be divided as follows * * *."
The word "balance" can mean only the "residue" of what is left after satisfying the preceding disposition made by the will. It will be noted that when disposing of that "balance" (which I construe to mean "residue") the testator blended his realty and personally into a single fund or mass and disposed of that fund or mass, or attempted to dispose of it, by the percentages expressed in the seventh article. I am now persuaded that the circumstance of such blending of real and personal assets into one residuary mass removes the case from the application of the ordinary rule that the personal property is the primary fund out of which the debts and general legacies should be met. Corwine
v. Corwine (Court of Errors and Appeals), 24 N.J. Eq. 579.
The rule is well stated by Vice-Chancellor Foster in In reBaylis, 95 N.J. Eq. 120, 121:
"Since the decision of the court of errors and appeals inCorwine v. Corwine, 24 N.J. Eq. 579, it has been the settled rule in this state, in the absence of an express charge or of anything else to the contrary in the will, that a testator generally intends the legacies given by his will to be a charge on his real as well as on his personal estate, only when the residuary real and personal estate are given together, `the rule of construction being that if the legacies are given generally, and the residue of the real and personal estate is afterwards given in one mass, the legacies are a charge on the residuary real as well as on the personal estate.'"
The rule in the Corwine Case was recognized by Vice-Chancellor Fielder in Weber v. Bardon, 92 N.J. Eq. 190,
although it was not applied, the court reaching the result that there had been "no intention on the part of the testator to blend real and personal property in the gift to his ultimate beneficiary or beneficiaries." Here, the blending is quite obvious and the rule of the Corwine Case will be applied. There will be a direction that the debts, funeral expenses *Page 479 
and general legacies be deducted from the gross estate. In practical effect these items will be apportioned between realty and personalty in the same ratio in which the realty and personalty contribute to the constitution of the gross estate.
I do not, however, express the same view with respect to the manner in which shall be charged administration expenses, including executors' commissions, legal fees and estate taxes. That question is not before me, not having been raised by the bill and not being necessarily involved in those questions that were presented by the bill. Allocation of such items may well be disposed of when their extent is ascertained and when all parties may be heard on any special equities that may be present.
 III.
It is argued that the initial intestacy of fifteen per cent., resulting from the fact that the testator disposed of only eighty-five per cent. of the "balance" (residue) of his estate, should not be increased by the percentages of those beneficiaries who may die before the termination of the trust. I have already held that by reason of the death of Louis Ost (he predeceasing the testator) the ten per cent. gift to Louis Ost lapsed. That gift, added to the fifteen per cent. already mentioned, resulted in intestacy to the extent of twenty-five per cent. The court is now asked to determine that if any beneficiary hereafter dies the share of the one dying should be added to the shares of the beneficiaries continuing to survive, and thus escape that further partial intestacy which otherwise would result. I do not consider it necessary or appropriate to determine that matter at this time and in advance of the occurrence of the death of any of the beneficiaries who survived the testator. By appropriate language to be expressed in the decree the question may be reserved for future determination, at such time when the question will be concretely present and not alone academic. *Page 480